ODOM, Justice.
 

 Mrs. Cora M. Culver, who owned an undivided seven-ninths interest in the N% of the SW% of section 24, township 16 north, range 5 west, filed suit in October, 1934, to have the property partitioned by Imitation. The suit was against Clarence A. Culver and Mrs. Georgia Culver Causey, who owned the remaining interest in the property. Various and sundry issues were raised in the answer of the defendants in that suit, which delayed the proceedings until November 20, 1936, when judgment was rendered ordering the property sold in order to effect the partition.
 

 A writ was issued directing the sheriff to sell the property in accordance with the judgment. The sheriff advertised it for sale at public auction to the last and highest bidder, for cash, the sale to take place on January 9, 1937. On that day Bert Kouns became the purchaser for $3,250, his bid being the last and highest. He paid the price to the sheriff, who executed a deed in his favor. The sheriff turned the proceeds of the sale over to the clerk of court, who was designated in the judgment as the notary to complete the partition.
 

 While the proceeds were yet in the hands of the clerk of court, Kouns, the purchaser, brought the present suit against the plaintiffs and defendants in the partition suit, to set the sale aside and to recover the sum he had paid to the sheriff as the purchase price, on the ground that the title conveyed to him was defective and suggestive of litigation. The sheriff and the clerk of court were made parties. He asked for, and was granted, a preliminary injunction restraining the clerk from distributing the proceeds of the sale.
 

 Various exceptions, pleas, and defenses were urged, among them being the exceptions of no cause of action and pleas of
 
 *719
 
 estoppel. As to the merits, defendants de-i nied generally the allegations of nullity set up by plaintiff.
 

 There was judgment for plaintiff, annulling the sale a.nd ordering the return to him of the amount he had paid. Defendants appealed.
 

 The grounds on which Kouns, the plaintiff in the present suit, seeks to set aside the sale and to have returned to him the price of the adjudication, as set out in his petition, are that, subsequent to the date on which Mrs. Culver instituted her suit to have the property partitioned and prior to the date on which the judgment ordering it sold was- rendered — in other words, while the partition suit was pending — Mrs. Cul-ver, the plaintiff, Clarence A. Culver, and Mrs. Causey, defendants in that suit, leased the land by separate instruments for oil and gas development, and, in addition thereto, sold, also by separate acts, certain mineral interests in the land; that the lessees and the vendees of these mineral interests were not made parties to the partition suit, and for that reason his attorneys advised him, after the sale, that “very probably” the sale was null and void, “or, at any rate, title to said property in petitioner would be hazardous and suggestive of litigation”; that his attorneys had advised him further that, inasmuch as the lease holders and owners of mineral interests had recorded their leases and titles prior to the date on which the judgment ordering the partition was rendered, “in all probability the said sales of mineral interests and oil and gas leases would remain in effect and petitioner very probably would not obtain good and valid title to the whole of said property, including mineral rights and other real and personal rights constituting appurtenances to said land; but that in any event, title in petitioner to the whole of said land, including the appurtenances thereto, such as mineral rights and gas rights, would be hazardous and very suggestive of litigation.” Paragraph 11, Petition.
 

 It is alleged in paragraph 13 of plaintiff’s petition: “That said lands are valuable principally because they have oil and gas possibilities, they being within one and one-half (1%) miles of a large producing gas well and within the same distance of other drilling operations for oil and gas; and that the value of said lands, including all oil, gas and mineral rights and other appurtenances thereunto, is set at the sum of three thousand two hundred fifty dollars ($3,250.00).”
 

 And in section 14 it is alleged: “That petitioner does not want to acquire the said lands, with said mineral interests and oil and gas interests outstanding in said other parties; but he is willing to comply with his said bid and accept a deed to said property, provided that the whole of said property, including valid title to the naked land and valid title to all oil, gas and mineral rights pertaining thereto, is conveyed to him.”
 

 Plaintiff’s counsel in their brief seem to concede that the adjudication conveyed to him good and valid title to the “naked land”;' that is, the land without the mineral rights. Their argument is that the sale to effect the partition did not divest the lessees and vendees of the mineral interests of their rights and that by the adjudication
 
 *721
 
 he acquired no more than what might be termed the “naked ownership” of the land, whereas plaintiff was entitled to and expected to acquire the land and all its “appurtenances,” including the minerals; and that, if it be held that he acquired the land with the minerals, the recorded leases and sales of minerals operated as a cloud upon his title, suggestive of litigation. They argue that, under the circumstances, the plaintiff should not be held bound by his bid, and, since he paid the price under “compulsion,” the judgment ordering the -return of the price is correct and should be sustained.
 

 Under the view which we take of the case as made out by the pleading and the evidence, it is not necessary to discuss the questions presented and argued in plaintiff’s brief. Our conclusion is that, even though plaintiff acquired no more than the naked ownership of the land, he is not entitled to recover the price which he paid. The reason is that he knew before and at the time of the adjudication that the land had been leased for oil and gas development and that mineral interests therein had been sold by the owners while the partition suit was pending, and that the lessees and vendees of the mineral interests were protesting and had notified the sheriff, who acted as auctioneer, of their outstanding interest in that property, and that they had not been made parties to the suit. In other words, he knew at the time of and before the sale all he knew later, was acquainted with all the defects in the title of which he is now complaining. And yet he accepted the adjudication and paid the price.
 

 Paragraph 8 of plaintiff’s petition reads as follows:
 

 “That said sales and assignments of mineral rights and interests and oil and gas leases were of record in the Conveyance Records of Bienville Parish, Louisiana at the time of the trial and the rendition of judgment in said suit, entitled ‘Mrs. Cora M. Culver vs. Clarence A. Culver et al. and the said purported sale by said Sheriff,- and were then in full force and effect and have not been canceled and erased from said Conveyance Records.”
 

 Paragraph 10 reads as follows:
 

 “That some fifteen alleged owners of mineral rights and rights under the oil and gas leases affecting said property, made a written protest to said Sheriff at the time of said sale, against the making of said sale, for the reason that all of the owners of such interest in and to said property were not and had not been made parties to said partition suit.”
 

 As these protests were made “at the time of said sale,” plaintiff had knowledge of them.
 

 These allegations form the basis of defendants’ exceptions of no cause of action and pleas of estoppel. The exceptions of no cause of action were overruled, and the case was tried on its merits.
 

 The testimony shows that the plaintiff, Kouns, did not attend the sale and had no connection with it personally. He was represented all through by V. R. Ham-monds, his agent. Hammonds bought the property in for Kouns and handed the
 
 *723
 
 sheriff a certified check for' the price. Kouns personally had no part in the transaction, nor did he personally take .part in this judicial proceeding from its inception to its close. The petition was verified by his attorney, and the injunction bond which he was required to give was signed “Bert Kouns, by A. K. Goff, Jr., Atty.-in-Fact.” We have searched the record thoroughly and have found no place where Kouns appeared personally. He did not testify.
 

 The testimony introduced by the defendants shows beyond question that Ham-monds, Kouns’ agent, knew long before the sale that the property was under lease and that the owners had sold mineral interests therein. Hammonds was engaged in the business of looking up titles, making abstracts, and doing curative work for oil and gas companies operating in this immediate vicinity. He represented George J. Greer, and Lide and Greer, who owned' leases on a large block of land, and was looking after their interests. Greer had acquired the Culver leases and had become interested in the mineral' rights which the Culvers had sold some time prior to the date on which the sale took place. The Culver land had been sold for taxes and purchased either by Mr. R. H. Wimberly or .one of his clients. Mr. Wimberly testified that Hammonds, representing Greer, came to him in November, 1936, about two months before the property was sold, and requested that he, as tax sale purchaser, ratify and confirm the Culver leases, and that he did so. The instrument he signed is dated November 13, 1936, and the sale took place on January 9, 1937. Other witnesses testified that'Hammonds knew of the oil and gas activities in that territory and had personal knowledge of the leases covering the Culver and other lands.
 

 Defendants in their answer specifically charged that Hammonds was Kouns’ agent and that he knew the conditions of the title before and at the time of the sale. While confronted with these charges, neither Kouns nor Hammonds was called as a witness to deny them, and it is in evidence that Hammonds was present during at least a portion of the trial.
 

 Counsel for defendants filed their brief in this court on October 21, 1937, and, according to the certificate of the printer, .a copy was forwarded on that day to plaintiff’s counsel. In their brief they stress the plea of estoppel, which was based upon the proposition that Hammonds was Kouns’ agent and that he knew the condition of the title before the sale. Counsel for plaintiff filed their brief on October 28, seven days later. Presumably they had read defendants’ brief. Yet they do not answer the special charges and defenses set up by the appellants.
 

 Kouns, the plaintiff, is chargeable with constructive knowledge of all that Hammonds, his agent, knew. The rule which prevails here and elsewhere is concisely stated in volume 2, section 368, page 286, of American Jurisprudence, as follows:
 

 “General Rule. — There is abundant authority supporting the general rule that the principal is chargeable with, and is bound by the knowledge of, or notice to, his agent received while the agent is acting
 
 *725
 
 within the scope of his authority and which is in reference to a matter over which his authority extends.”
 

 The same rule is stated in different words in volume 3, section 262, Agency, page 194, of Corpus Juris Secundum, as follows:
 

 “Subject to the qualifications hereafter considered, it is a well settled general rule, frequently embodied in statutory enactments, that a principal is affected with constructive knowledge, regardless of his actual knowledge, of all material facts of which his agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, although the agent does not in fact inform his principal thereof.”
 

 This principle is also stated in Seixas, Syndic, v. Citizens’ Bank of Louisiana, 38 La.Ann. 424.
 

 As a basis for his plea that the price of adjudication be returned to him,.Kouns alleges, but does not prove, that the sheriff granted him time in which to investigate the title. The sheriff was asked if he did not agree to grant the delay requested, and he said: “No sir. I told him this that he might have two or three days I didn’t know.” As we have said, neither Kouns nor Hammonds, his agent testified. The sheriff said that, when Hammonds asked for the delay, he told him he could not grant it and that, unless the amount of the bid was paid by 2 o’clock, he would have to reoffer the property. Whereupon Ham-monds left but soon returned with a certified check.
 

 The sheriff could not grant the time requested but demanded payment at or before a certain hour of the day of sale. The purchaser was bound to pay or lose his bid. Code Prac. art. 689; Beck v. Realty Co., on rehearing, 130 La. 43, 57 So. 578.
 

 If the sheriff had granted the delay, it would have been at his own risk. Gallier v. Garcia, 2 Rob. 319; Walker v. Allen, 19 La. 307.
 

 This cannot be termed payment “under compulsion,” as counsel argue. It was voluntary.
 

 The jurisprudence is settled, as counsel for plaintiff argue, that a purchaser at a judicial sale cannot be compelled to accept a defective title or one strongly suggestive of future and serious litigation. But that rule has no application “when the buyer has been informed, before the sale, of the danger of eviction.” Civ.Code, art. 2557.
 

 In the case of Municipality No. 1 v. Cordeviolle and Lacroix, 19 La. 235, decided in 1841, the adjudicatees of certain city lots sold at auction refused to accept title and pay the price. The suit was to compel them to accept, and they defended on the ground that there were claims against the lots. The court said:
 

 “If any one has a claim on the thing sold, whereby the purchaser is in danger of. eviction, he may retain the price; but there is an exception to this rule when he has been informed before the sale of this danger; La.Code, article 2535 [now article 2557], latter clause.”
 

 
 *727
 
 In the case of Bonnecaze v. Grannery, 5 La.Ann. 166, this court said:
 

 “It is manifest, that before the sale the plaintiff was apprized of the danger of eviction, which he now alleges; he cannot, therefore, under the textual provisions of article 2535 of the code, suspend the payment of the price. He has no action until he is evicted.”
 

 To the same effect are the following cases: Bemiss v. Dwight et al., 3 La.Ann. 337; Boisblanc et al. v. Peter Markey, 21 La.Ann. 721; Bayley, Executor, v. David Denny, 26 La.Ann. 255; Succession of Weber, 16 La.Ann. 420, at page 422, Merrick, C. J.; Harang, Jr., v. Blanc et al., 34 La.Ann. 638.
 

 In a much more recent case, that of Jennings-Heywood Oil Syndicate v. Home Oil & Development Co., 113 La. 383, 37 So. 1, this court said:
 

 “We find that defendants had full knowledge of the Corkran suit at the time of the purchase, and, this being so, the textual provision of the Code debars them from urging it as ground for suspending payment of the price. Civ.Code, art. 2557.”
 

 In support of this ruling the court cited four of the above-cited cases. This case did not involve a judicial sale, but the principal involved is the same.
 

 For the reasons assigned, the judgment appealed from is reversed and set aside, the plaintiff’s demands are rejected, and it is ordered that his suit be dismissed at his cost in both courts.
 

 HIGGINS, J., absent