Plaintiffs and defendant Patience Ford own adjoining lots on the south side of Reddy Street, in the City of Baton Rouge. There is a house on plaintiff's lot, about three feet from the line dividing the two lots, said line being the western property line of plaintiff and the eastern line of defendant. Plaintiffs' lot is on an elevation from the street sidewalk curb, and level for about one hundred feet and thereafter gradually sloping to the south, and to the west, the western border line being about ten feet higher than the western border line of defendant Patience Ford's lot when defendant's lot was in its natural condition.
Plaintiffs allege that their lot in its natural condition never washed and was always compact; that for several months Jiles Ford, the other defendant, while acting as the agent and with authority of his mother, Patience Ford, began excavating dirt from the western property line of the Ford lot towards its eastern property line in order to level off the same; that during the month of July, 1940, defendant Jiles Ford began excavating and the removal of the dirt near the boundary line that separates the two lots to such an extent as to cause the lateral support of plaintiffs' lot to begin to give way and crumple, washing off their property for a distance of at least five feet and unto defendant's property; that the lateral support of their property is continuing to crumple and give way, and at the present rate of falling, the house upon plaintiffs' property will soon fall off and be damaged, necessitating the removal of the house from its present position, unless the lateral support is replaced. They allege that, in order to replace the lateral support, it would take an estimated cost of $500 to hire labor and secure material; that the rental value of their lot and house has decreased by at least $10 per month; that they lost four months' rental at $25 per month; that the value of the lot has been damaged to the amount of $1,000 and that there is also an actual damage of $1,000 to the lot. Although they have alleged damages amounting to over $2,600, they finally allege, and for which they pray, that the acts and actions of Jiles Ford and Patience Ford have caused them damage to the amount of $1,100, $1,000 for actual damage to the house and lot, $100 for loss of rent.
Defendant Jiles Ford filed an exception of misjoinder of parties defendant, which was overruled. Both defendants filed exceptions of no cause or right of action, which were also overruled. They then filed a plea of prescription of one year, contending that the dirt was removed and the lot levelled prior to October 24, 1939, and this suit not filed before June 6, 1941, which was referred to the merits. Defendants then answered, admitted that the lots adjoined and that Jiles Ford had excavated and levelled the lot of defendant Patience Ford, but denied all of the rest of plaintiffs' allegations. They further answered, setting forth that Patience Ford started selling dirt from the lot on or about April 24, 1938, for the purpose of levelling her lot to construct a cottage thereon; that this excavation and levelling of the lot continued until October 24, 1939, when a permit was obtained to build the cottage; that the agent of plaintiffs well knew of the said excavation and did nothing to prevent the same, and that therefore plaintiffs are now estopped from asserting any claim for damages; furthermore, that plaintiffs made no effort to minimize their alleged damages and therefore "through their gross negligence and laches are guilty of contributory negligence, which defendants specially plead herein".
The trial resulted in the overruling of the plea of prescription and a judgment in favor of the plaintiffs and against the defendants, in solido, in the sum of $1,000 as damages to the property, disallowing the $100 claimed for loss of rent. Defendants have appealed.
 Exception of Misjoinder of Defendants.
Defendant Jiles Ford contends that since he alone is responsible for the removal of the dirt, he alone should be made party defendant. There is no merit to this contention. Plaintiffs allege that the removal of the dirt was done by Jiles Ford acting as agent of defendant Patience Ford, and under their allegations, both defendants are liable in solido. The agent, as well as his principal, is liable, in solido. Civil Code, Article 2324. Furthermore, only Jiles Ford filed the exception. It was up to Patience Ford to complain; he, Jiles Ford, could not do so on her behalf. Dubuisson v. Long, 175 La. 564, 143 So. 494. This exception was properly overruled.
 Exception of No Cause or Right of Action.
This exception really goes to the merits of the case. This is a suit to recover alleged damages resulting from the acts of Jiles Ford, as agent of his mother, *Page 621 
Patience Ford, in the removal and levelling of the adjoining lot owned by Patience Ford. The law requires that full restitution must be made by him who causes damages to another. Plaintiffs are entitled to have their property restored, as nearly as possible, to the condition it was in prior to the acts of defendants, of which they complain. Civil Code, Articles 667, 2315, 2316, 2317; Egan v. Hotel Grunewald Co., 129 La. 163, 55 So. 750. The exception was correctly overruled.
 Plea of Prescription.
It safely can be stated that Jiles Ford, with the permission and consent of his mother, Patience Ford, began the removal of dirt from defendant's, Patience Ford's property some time in the year 1938, for the purpose of levelling the lot to the grade of the sidewalk on Reddy Street abutting the front of the property. The excavation was begun on the western side of the lot and progressed towards the eastern side. The evidence satisfies us that the excavation and levelling were practically completed on October 24, 1939, when defendant obtained a permit from the City of Baton Rouge to construct a cabin on the lot. The evidence also satisfies us that subsequent to October 24, 1939, there was no excavation or the removal of dirt from the lot, save probably a few spadefulls either to fill up holes on the lot or to stop the erosion on plaintiff's property. Thus, it fairly can be stated that the date from which prescription began to run is fixed as October 24, 1939. Under Civil Code, Article 3536, the action has prescribed, unless Civil Code, Article 3537, applies. Under Article 3537, prescription runs where property has been injured, damaged or destroyed from the date knowledge of such damage is received by the owner of the property. The burden of proof as to when knowledge is acquired by the owner of the land rests upon the owner, or, as sometimes expressed, upon the one against whom prescription is pleaded. See Citizens' Bank v. Jeansonne,120 La. 393, 45 So. 367; Erwin v. Lee Lumber Co., 163 La. 191,111 So. 673; Ducros v. St. Bernard Cypress Co., 164 La. 787, 114 So. 654. The next query is the date when plaintiffs had such knowledge and have plaintiffs borne the burden of proof?
Plaintiffs' property was in charge of Mr. Milton Doiron as their agent. He testified that he had had this property in charge for over five years and was very familiar with both the property of plaintiffs and defendant Patience Ford; that he visited plaintiffs' property some ten and twelve times a month, and that he knew that dirt was being removed from defendant's lot from 1938; that the removal of dirt, or excavation, was carried on intermittently and that he realized for the first time that the excavation to a considerable extent was being made in the spring of 1940; that in July, 1940, his attention was called to the damage being done to plaintiffs' property, and that he felt it his duty to notify plaintiffs and did so.
Mr. Buffington Mayer, one of the plaintiffs, states that some four months prior to July, 1940, he passed this property and saw that excavation had been made on defendant's property, but that he did not realize that such excavation was damaging plaintiffs' property. He also states that it was in July, 1940, when he was informed by his agent that the property had been and was being damaged by the excavation on defendant's property, and that he immediately notified the Paulsen heirs, the other plaintiffs, of such information. Mr. Otto C. Paulsen, one of the Paulsen, heirs and as agent of the others, testified that he was informed of the damage in July, 1940, and that neither he, nor any of the other heirs, had any knowledge of excavation being done on Patience Ford's lot prior thereto.
Under the evidence introduced in this record, we are of the opinion that Mr. Doiron, plaintiffs' agent, had constructive, if not actual, knowledge that the excavation or removal of the dirt on defendants' lot and the levelling of the lot was damaging or would damage plaintiffs' lot. He admits that he visited the locus in quo some ten or twelve times a month. Conceding that it was only in the spring of 1940 that he first realized that the excavation to a considerable extent had been or was being done, yet the circumstances then apparent were such as to give him notice. He is charged with having seen that which he should have seen. He is at least charged with constructive notice, if not actual notice. He states that there was considerable wash on plaintiffs' property, "the wash had taken away dirt from the sewer line about a foot or two from the house". The photographs introduced in evidence show considerable damage to the property. One of plaintiffs' witnesses states that the pillars of the house were affected. All of *Page 622 
this evidence shows that the damage done to plaintiffs' property had been accruing for a considerable period prior to July, 1940; in fact, we may say prior to June 5, 1940, more than a year from the filing of the suit. Again we state that Mr. Doiron may have been ignorant of the extent of the excavation on defendant's lot and of the extent of the depredations or damage to the plaintiffs' lot, but he had such knowledge more than a year prior to June 5, 1941, the date of the filing of the suit, as to require prompt and reasonable diligence on his part to ascertain those facts.
The plaintiffs are chargeable with constructive knowledge of all that Mr. Doiron, their agent, knew. In the language of Justice Odom, in Culver v. Culver, 188 La. 716, 178 So. 252 page 255, "The rule which prevails here and elsewhere is concisely stated in volume 2, section 368, page 286, of American Jurisprudence, as follows:
"`General Rule. — There is abundant authority supporting the general rule that the principal is chargeable with, and is bound by the knowledge of, or notice to, his agent received while the agent is acting within the scope of his authority and which is in reference to a matter over which his authority extends.'
"The same rule is stated in different words in volume 3, section 262, Agency, page 194, of Corpus Juris Secundum, as follows:
"`Subject to the qualifications hereafter considered, it is a well settled general rule, frequently embodied in statutory enactments, that a principal is affected with constructive knowledge, regardless of his actual knowledge, of all material facts of which his agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, although the agent does not in fact inform his principal thereof.'
"This principal is also stated in Seixas, Syndic, v. Citizens' Bank of Louisiana, 38 La.Ann. 424."
The agency of Mr. Doiron is not denied; nor is it contended that it was not his duty to impart whatever knowledge he had pertaining to the property; in fact, he states that it was his duty to do so. In 2 Am.Jur. § 370, p. 289, we find: "Upon like principle it has been held that notice to one who collects rents in a tenement building, and who also gives attention to repairs on it, of the danger that plastering on the ceiling of a hallway will fall will charge the owner with notice of the danger", citing Dollard v. Roberts, 130 N.Y. 269, 29 N.E. 104, 14 L.R.A. 238. This is our case.
Furthermore, we find in 3 Corpus Juris Secundum, § 263, p. 197, "Although there is authority holding that the rule of constructive notice to a principal has no operation whatever in a case where the agent himself has not received actual notice, it is generally held that the principal is charged with a knowledge of facts, pertinent to transactions by the agent, which the agent could have ascertained by the exercise of reasonable diligence."
The plaintiffs being charged with constructive notice of the knowledge of their agent Doiron, the Supreme Court of this State had under consideration a plea of prescription under Civil Code, Article 3537, as amended by Act 33 of 1902, and had this to say in the case of Poirier v. Burton-Swartz Cypress Co., 127 La. 936, 942, 54 So. 292, 294: "The language of this act is not different in its import from that of article 613, Code Prac., relating to the action in nullity of judgment for fraud, which is that the suit must be brought `within the year the fraud has been discovered.' Construing that article, this court said, in the case of Succession of Dauphin, 112 La. 103-143, 36 So. 287, quoting from the decision of the Supreme Court of the United States in the case of Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807, that:
"`The burden of proof is on the plaintiff in nullity to show at what date the discovery of the fraud was made, and such information as ought to put the plaintiff on inquiry is sufficient to start the running of the prescription; and in this class of cases the plaintiff is held to stringent rules of evidence.'
"And the court quoted further from that decision the following:
"`Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it.'"
In the case of Foster v. Mansfield, C. L.M.R. Co.,146 U.S. 88, 99, 13 S.Ct. 28, 32, 36 L.Ed. 899, the Supreme Court of the United States held that:
"The defense of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, *Page 623 
and hard to disprove; and hence the tendency of courts in recent years has been to hold the plaintiff to a rigid compliance with the law, which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts."
Our appreciation of the facts in this case is that the excavation which produced the damages, the basis of this suit, occurred prior to October 24, 1939, and it is our conclusion that plaintiffs have failed to sustain the burden of proving to a legal certainty that they did not have knowledge thereof until within a year of filing their suit, and that therefore the plea of prescription should have been sustained.
For these reasons assigned, the judgment appealed from is annulled and set aside, the plea of prescription of one year is sustained, and plaintiffs' demands are dismissed at their cost in both courts.