JESSE C. McGEE, Judge ad hoc.
This is an appeal by plaintiff, Office ■ Equipment, Inc., from a judgment of the First City Court of New Orleans, rejecting-plaintiffs demands for a judgment against defendant, for the price of three chairs, allegedly sold by plaintiff to defendant.
It is urged as a ground for reversal, plaintiff’s notice to the defendant through his secretary that the property in question then in defendant’s possession was to be returned only to plaintiff, or its representative, but that notwithstanding this notice, the property was delivered by the defendant to a Mr. Don Dahl, an unauthorized'1 *87 person. Appellant argues that a principal is affected with “constructive knowledge” regardless of his actual knowledge, of all material facts of which his agent receives notice or acquires knowledge while acting in the course of his employment, etc., although the agent does not in fact inform 'his principal thereof. Mayer et al. v. Ford et al., La.App., 12 So.2d 618.
This litigation is an outgrowth of disputes and feuding between the officers of the plaintiff corporation and its allied corporation Office Designing and Equipment, Inc., both engaged in the same business and having the same address, telephone, show room and entrances. Mr. A. W. Herrman being the president of both corporations .and Mr. Don Dahl being vice president of Office Designing and Equipment, Inc., and sales representative of both corporations. .Mr. Dahl is the only person .with whom defendant ever dealt, having only casually met Mr. Herrman while being shown some .articles by Mr. Dahl at the show room of both corporations.
Mr. Hyde had, from time to time, made •purchases from plaintiff through Mr. Dahl, and the bills for these purchases were promptly paid upon receipt of the invoices, .as the record shows; that March 12, 1958, Mr. Dahl had plaintiff deliver to defendant three green chairs being the property in •question. Dray receipt No. 67294, on which •is noted “on loan.” D-l. After the delivery of these chairs to defendant, Mr. Dahl and Mr. A. W. Herrman had some business disagreement which resulted in Mr. Dahl being let out and no longer a representative of the plaintiff here.
Mr. Dahl placed these chairs with defendant on loan as he did not have the •chairs wanted by defendant (Tr. 50): the •chairs were picked up by him the latter part of June, 1958, because defendant had purchased other chairs and wanted these ■out of his way; it was Dahl’s understanding that Mr. Herrman was in Mr. Hyde’s office after the chairs had been picked up. .{Tr. 52.) Mr. Hyde stated that the chairs were long delivered to Mr. Dahl before he received the invoice for the chairs from plaintiff; that the chairs in his office were purchased from Taylor Furniture Company; that he had informed Mr. Herrman that the chairs were delivered to Mr. Dahl, and was asked by Mr. Herrman if he would put that in writing and he (Hyde) said he would. (Tr. 47-48.) ' '
The testimony of Mr. Herrman and also that of Mr. Seghers was to the effect that the chairs were in Mr. Hyde’s office on their visit there sometime in 1958; that the young lady’s (secretary) attention was called to the fact 'that the chairs were there and that she was requested to inform Mr. Hyde (not in the office at that time) that the chairs, were not to be released to any one but us (Tr. 3 bottom of page); Mr. Seghers on cross examination stated that the chairs were in Mr. Hyde’s private office but that they could be seen through the open door from the secretary’s office, and when asked the color of the chairs, he responded “if my memory serves me right, they were of a gold color.” (Tr. 27-28.) The record here shows that the chairs in question were green; Mr.' Dahl testified that the chairs in Hyde’s office were not DoMore chairs, and that he saw the gold chairs in Hyde’s office and went by and spoke to Mr. Fourcade about the matter. (Tr. 50.)
There is a letter in the record dated February 7, 1958, on Office Equipment, Inc., stationery, áddressed: To Whom It May Concern, stating that effective February 3, 1958, our selling organization will be known as “Office Designing and Equipment, Inc.,” and that this name will be used in dealing with our customers (The people who buy from us). The letter further states that the officers of Office Equipment, Inc., remain.the same, A. W. Herrman, president and L. H. Herrman, secretary and treasurer, while the officers of Office Designing -and Equipment,' Inc., are A. W. Herrman, president and treasurer, and Don E. Dahl, vice president and secretary, and the letter is signed by A. W. *88 Iierrman as president of both corporations. D-2. Other exhibits: letter dated October 15, 1958, on stationery of Office Equipment, Inc., to Mr. Gordon B. Hyde, advising that plaintiff’s auditors find four pieces of furniture delivered but never invoiced, and describing a steel legal size filing cabinet, green, and three DoMore chairs, and attached to the letter is an invoice covering these items, and requesting permission to see or inspect a certain cancelled check for endorsers. D-4; the check requested in exhibit D-4, dated August 2, 1958, payable to Office Designing and Equipment, Inc., and Don Dahl for $163.77, with the rubber stamp endorsement reading “Pay to the order of Whitney National Bank, Office Equipment, Inc., but no other endorsements appearing thereon. D-5; also, exhibit D-6 is an invoice on Office Equipment, Inc., stationery, dated July 29, 1957, order No. 64514, for one steel case, four drawer, legal size, olive green, “on loan;” also, there is an invoice dated February 21, 1958, on Office Designing and Equipment, Inc., “formerly Office Equipment, Inc.,” order No. 67074, to Mr. Hyde, covering certain carpet. D-7. Another invoice dated March 17, 1958, on stationery of “Office Designing and Equipment, Inc., formerly Office Equipment, Inc.,” order No. 67369, to Mr. Hyde covering two legal files. D-8.
Did the defendant have knowledge that Dahl was no longer a representative of the plaintiff before delivering the chairs to him? The defendant-appellee argues that the testimony and exhibits (D-2) show that Mr. Dahl did represent both of the companies in the sale and delivery of their merchandise, and that defendant-appellee did not have any knowledge, actual or constructive that Mr. Dahl was no longer with the plaintiff prior to defendant’s delivery of the chairs to Dahl.
The plaintiff-appellant argues that in informing the secretary in Mr. Hyde’s office, she being defendant’s agent, the defendant was thus put on notice. We have no quarrel with the rule of law that notice to the agent is notice to the principal, but here we do not think it is applicable for the reason that when the secretary was informed about the chairs, the chairs were no longer in Mr. Hyde’s possession or under his control, the chairs having apparently been picked up in June, 1958, by Mr. Dahl and still in his possession. (Tr. 52.)
Article 3029 of the LSA-Civil Code treats of the rights of third persons without notice of the revocation of mandates:
“Art. 3029. If the principal only notifies his revocation to the attorney, and not to the persons with whom he has empowered the attorney to transact for him, such persons shall always have the right of action against the principal to compel him to execute or ratify what has been done by the attorney; the principal has, however, a right of action against the attorney.”
Some of the citations interpreting this article are:
“Where a debtor has settled with an agent of the creditor, without notice of revocation of the agent’s powers, he is discharged; and the remedy of the principal is against the agent. Harris v. Cuddy, 1869, 21 La.Ann. 388.”
“A principal is bound by the acts of his agent made with third persons, after the revocation of the agent’s power, unless it appear that the parties with whom the agent deals had notice of the revocation of the agent’s authority and were not acting in good faith. George v. Sandel, 1866, 18 La. Ann. 535.”
“One who has dealt with an agent in' a matter within the agent’s authority has a right to assume, if not otherwise informed, that the authority continues; and, unless notice of revocation is brought home to him, the principal is bound, if the dealings continue after- *89 the authority is revoked. Bergerot v. Farish, 1844, 9 Rob. 346.”
In view of the foregoing and the law applicable thereto, we are of the opinion that the record here fully supports the trial court’s judgment herein, and the judgment appealed is hereby affirmed, with all costs of this appeal assessed against the plaintiff-appellant.
Affirmed.