248 So.2d 349 (1971)
BANK OF LOUISIANA in New Orleans
v.
ARGONAUT INSURANCE COMPANY et al.
No. 4403.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1971.
Rehearings Denied June 7, 1971.
*350 Richards & Hoepffner, Charles E. Richards, New Orleans, for plaintiff-appellee.
Adams & Reese, Henry B. Alsobrook, Jr., New Orleans, for defendants-appellants.
Before REGAN, CHASEZ, and TAYLOR, JJ.
TAYLOR, Judge.
This is a suit instituted by the Bank of Louisiana in New Orleans, hereinafter referred to as the Bank, to recover from Argonaut Insurance Company, hereinafter referred to as Argonaut, and Wilkinson & Company, Inc., certain unearned premiums on insurance policies issued to Mayfair Industries, Inc., which were cancelled before the term of the policies had expired. The Bank voluntarily dismissed its suit against Wilkinson & Company, Inc., and after trial on the merits, obtained judgment in its favor and against Argonaut in the amount of $9,386.62 together with legal interest from January 15, 1967 and all costs. It is from this adverse judgment that Argonaut prosecutes the instant appeal.
On March 1, 1966 Argonaut issued certain liability and Workman's compensation policies to Mayfair Industries, Inc. Mayfair subsequently became in arrears on the payment of premiums on these policies. It was therefore decided among Argonaut, Mayfair, and Wilkinson & Company, Inc., that these policies would be refinanced and rewritten in order that Argonaut could obtain advance payment of the premiums which would fall due.
All negotiations for this financing were handled through Wilkinson & Company, Inc. At all times pertinent Wilkinson & Company, Inc. was the agent of Argonaut and Mayfair relative to refinancing these policies.
Mr. Billy H. Wilkinson, President of Wilkinson & Company, Inc. contacted the Bank relative to obtaining a loan in order to allow Mayfair to make advance premium payments to Argonaut on the refinanced policies. The Bank was not informed of the fact that the policies involved were being rewritten. Mr. Yaeger, the Vice-president of the Bank, testified that had the Bank been so informed the loan would never have been granted. Argonaut however was aware that Mr. Wilkinson was negotiating with a financing institution to obtain money to pay premiums one year in advance on the rewritten policies, although Argonaut denies that it knew with which bank Mr. Wilkinson was dealing. However, it was a condition precedent to the rewriting of the policies that an adequate financing arrangement be reached with the Bank.
After Wilkinson and the Bank had reached an agreement on the terms of the *351 loan, the Bank forwarded the note of Mr. Wilkinson. Mr. Wilkinson filled in all blanks on the note with the relevant information and forwarded it to Mayfair for signature. The note was signed and ultimately returned to the Bank by Mr. Wilkinson on September 14, 1966. Upon receipt of the signed note the Bank then credited the money to Wilkinson's checking account and Wilkinson was to remit the money to Argonaut. As a result of the successful negotiations of the parties the original policies were terminated as of August 17, 1966 and coverage began under the rewritten policies as of the same date with a term of one year. Subsequently however due to Mayfair's cessation of operations and impending bankruptcy these rewritten policies were cancelled by the Bank on January 6, 1967, thereby leaving in Argonaut's hands certain unearned premiums which the Bank now claims.
In connection with the confection of the aforementioned note, Mayfair granted to the Bank an assignment of its rights to any unearned or return premiums which might ever become due and owing to Mayfair under the rewritten policies. Mayfair also assigned to the Bank the right to cancel said policies should Mayfair become insolvent, fail in business or default on the note. The assignment of these rights to the Bank was contained on the face of the note and, by the terms of the note, was given as security for payment of Mayfair's indebtedness to the Bank. It is by virtue of this assignment that the Bank is claiming the unearned premiums on the cancelled policies.
Argonaut is resisting the claim of the Bank on essentially two grounds. The first of those grounds is that the Bank failed to prove that the signature on the note, that of Mr. Sam Porter, the President of Mayfair Industries, Inc., was genuine. We are of the opinion that this defense is not well founded.
The record establishes the fact that Mayfair Industries, Inc. made several payments on this note after the alleged signature of its president had been affixed. If this were not the signature of the president of the corporation we do not believe payments in any amount would have been forthcoming. Moreover Argonaut has not contested the genuineness of the signature on the note but merely argues instead that the Bank has not met its burden of proof in establishing that the note was in fact signed by the person whose alleged signature appears on its face. We cannot agree for if the Bank had sued on the note, under LSA-C.C.P. art. 1702 no proof of the signature would be required. Absent Argonaut's contesting the genuineness of Mr. Porter's signature, which it has not done, we find the Bank has met its burden of proof as the signature on the note will be presumed to be that of the person it purports to be.
The second basis on which Argonaut resists the Bank's claim is that compensation has taken place to extinguish its obligation to repay any unearned premiums. Argonaut alleges that it had no knowledge of the assignment which Mayfair granted to the Bank and which allowed the Bank to receive back the unearned premiums on the policies in question until January 10, 1967. On this date Mr. Bertrand, the District Manager of Argonaut, received a letter from Mr. Wilkinson confirming a telephone conversation of January 6, 1967 which informed Argonaut that Mayfair had ceased operations and that the Bank would expect its return premiums as soon as possible. At this time Mayfair was indebted to Argonaut in the amount of $14,781.09, which sum represents back due and unpaid premiums on the original policies issued on March 1, 1966. Since Argonaut alleges that it had no knowledge of the assignment, the argument is urged that under the terms of LSA-C.C. art. 2212 Argonaut may offset its obligation to pay Mayfair's assignee the return premiums against Mayfair's obligation to pay Argonaut the amount of past due premiums on the original policies.
*352 After a careful reading of the record, we are of the opinion that Argonaut had knowledge of the assignment at the time the note was confected. As we observed before, Wilkinson & Company, Inc., was the agent of Argonaut at the time the Bank was contacted relative to the financing arrangement and Mr. Wilkinson was very familiar with the terms of the note and the assignment. It is a well settled principle that knowledge possessed by the agent is imputed to the principal even if the agent neglected to specifically convey those facts to the principal. Culver v. Culver, 188 La. 716, 178 So. 252 (1938); Mayer v. Ford, La.App., 12 So.2d 618 (1943); Office Equipment, Inc., v. Hyde, La.App., 145 So.2d 86 (1962). However Mr. Wilkinson testified that Argonaut knew at the time the negotiations were being conducted that it was the Bank of Louisiana who would advance the money for payment of premiums on the rewritten policies. Furthermore Mr. Yaeger testified that after the note had been signed, a copy of the note and assignment agreement was sent to Argonaut directly by the Bank. Along with the note was a document of notification dated September 14, 1966 which contained the following specific language:
"Gentlemen:
"We have financed the premium on the above described policy (ies) issued by your agent.
"A copy of the note and agreement is enclosed herewith for your records.
"Please take notice that we are entitled to any amounts which are due, or may become due, in the event of cancellation of said policy (ies), or losses payable under such policy (ies), except where such right is in conflict with the interests of a bona fide mortgagee whose interest is presently recorded with you. Kindly note also that we have the right, under the agreement, to direct the cancellation of such policy(ies) in the event of non-payment of any installments provided therein.
"Kindly sign and return the enclosed carbon copy of this letter in acknowledgement of the within notice."
Despite some testimony to the contrary we are of the opinion that Argonaut was well aware of the assignment of Mayfair's rights to the Bank prior to the written notice of cancellation dated January 10, 1967.
LSA-C.C. art. 2209 provides as follows:
"Compensation takes place only between two debts having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable.
"The days of grace are no obstacle to the compensation."
When the assignment was made by Mayfair in favor of the Bank, Argonaut did not owe Mayfair a debt which was liquidated and demandable. What Mayfair assigned to the Bank was a mere contingent right  that if the policies were ever cancelled any unearned premiums would be paid to the Bank. Therefore at the time of the assignment compensation could not have taken place.
LSA-C.C. art. 2212 which provides:
"The debtor, who has accepted purely and simply the transfer which a creditor has made of his right to a third person, can no longer oppose to the latter the compensation which, before the acceptance, he might have opposed to the former.
"As to the transfer which has not been accepted by the debtor, but which has been notified to him, it hinders only the compensation of credits posterior to that notification."
is not applicable to this situation because Argonaut, although not specifically approving the assignment by Mayfair, had knowledge of the assignment prior to the cancellation *353 of the policies. Such notice prevents compensation between the prior debt which Mayfair owed Argonaut and the debt which Argonaut owes to repay the unearned premiums because Argonaut's debt did not become one to which compensation could apply, i. e., liquidated and demandable, until the policies were cancelled. Argonaut had knowledge of the assignment before the date of cancellation.
We noted that in its judgment the lower court granted plaintiff-appellee, Argonaut, $9,386.62 plus legal interest from January 15, 1967 until paid. Since suit was not filed until August 12, 1968, the judgment must be amended to grant legal interest from date of judicial demand rather than January 15, 1967.
For the foregoing reasons the judgment of the lower court is amended and there will be judgment herein in favor of plaintiff-appellee, Bank of Louisiana in New Orleans, and against defendant-appellant, Argonaut Insurance Company, in the amount of $9,386.62 plus legal interest from date of judicial demand until paid. Costs of all proceedings to be borne by defendant-appellant.
Amended and affirmed.