**CREDIT ALLIANCE CORPORATION, a New York Corporation, Plaintiff,**

v.

**STURDEVANT–VAN WORMER INSURANCE COMPANY, a Montana Corporation, et al., Defendants.**

**No. CV 77–3–M.**

United States District Court, D. Montana, Missoula Division.

Feb. 20, 1979.

Lino A. Marsillo, Missoula, Mont., for plaintiff.

Raymond P. Tipp, Missoula, Mont., for defendant Sturdevant.

D. R. Matthews, Missoula, Mont., for defendant Bandy.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

RUSSELL E. SMITH, Chief Judge.

Defendant Sturdevant-Van Wormer Insurance Company (Sturdevant) is an insurance agent. With the aid of Spence Pitts Insurance Company (Pitts), an insurance broker, it arranged to insure heavy equipment sold by Western International Equipment, Inc. (Western), and its subsidiaries, against physical loss. The insurance was

placed with Manufacturers and Wholesalers Indemnity Exchange (Insurer), which issued a master policy running to Western. The master policy insured Western, the purchasers of property sold by Western, and the holders of notes secured by such policies. It contemplated that certificates of insurance would be issued to purchasers and note holders. Western was authorized to issue binders upon the sale of a piece of heavy equipment. The contracts of sale were sold to finance companies, one of which was the plaintiff, Credit Alliance Corporation (Credit Alliance). The contracts were fully assignable. They reserved title in the holder until the purchase price was paid and required that the buyer insure the property against physical damage with loss payable to the holder as its interest appeared. When a binder was issued, Sturdevant would charge the premium to Western's open account.

Credit Alliance, which purchased 28 contracts from Western, insisted on paying the insurance premiums directly to Sturdevant. The amounts of the premiums were shown on the conditional sales contracts, and, for each of the 28 contracts, Credit Alliance sent a check to Sturdevant in the exact amount shown on the face of the contract. Sturdevant credited these checks to the account of Western, but certificates of insurance were issued to the purchaser with loss payable to Credit Alliance as its interest should appear. Sturdevant was fully aware of what was being done.

The master policy provides that, if it is cancelled by the Insurer, the premiums will be returned pro rata. It does not specify to whom the return should be made, but the Insurer had, as a result of its dealings, issued certificates of insurance not to Western, the insured in the master policy, but, as was contemplated, to the purchasers and the holders of the conditional sales notes. Twenty-eight of these certificates were fully paid for by Credit Alliance.

Sturdevant claims that Western owed it money because it failed to pay the premiums on other certificates of insurance issued and that it is entitled to use the refunds on policies paid for by Credit Alliance to recoup the money owed by Western. Western had no interest in the Credit Alliance certificates of insurance, and it is axiomatic that Sturdevant could not use Credit Alliance money to pay the Western debt. Credit Alliance and its contract purchasers owned the property insured, paid for the insurance, and were entitled to the proceeds of the insurance certificates in the event of loss. When the insurance was cancelled, Credit Alliance and the contract purchasers lost their insurance coverage and equitably were entitled to a refund of the unearned premiums. The law is settled that, upon the cancellation of insurance under a policy which provides for refunds in the event of cancellation, the insurer owes the insured. *See Bank of Louisiana v. Argonaut Insurance Co.*, 248 So.2d 349 (La.App.1971); *Lawton-Byrne-Bruner I.A. Co. v. Afco Time Payments, Inc.*, 465 S.W.2d 12 (Mo.App. 1971); *Spilka v. South America Managers, Inc.*, 54 N.J. 452, 255 A.2d 755 (1969); 43 Am.Jur.2d *Insurance* § 634 (1969).

An insurance company which issues a master policy in contemplation of the issuance of certificates of insurance to designees of the owner named in the master policy, and which then issues those certificates, insures by separate contracts of insurance those designees. The master policy governs the relationship only to the extent that it evidences the terms of the insuring agreement.

By virtue of Mont.Code Ann. (1978) § 33–17–1102, when the insurer, through Pitts, paid the refunds to Sturdevant, Sturdevant became an involuntary trustee of the money for the true owners.

Sturdevant urges that, since the status of the accounts between Credit Alliance and the contract purchasers is not shown, it should be allowed to retain the money. It has no legitimate interest to protect except to escape multiple obligations. It is protected in that all contract purchasers are parties to this action and, with one exception, have been defaulted. As a further protection, the court will require that

henceforth Credit Alliance act in this matter as a trustee for itself and all parties who may have an interest in the refunds.[1]

IT IS THEREFORE ORDERED that judgment be entered in favor of the plaintiff Credit Alliance Corporation and against the defendant Sturdevant-Van Wormer Insurance Company in the amount of Seventeen Thousand Five Hundred Eighty-Five Dollars ($17,585.00), together with interest at the rate of 6% per annum since November 6, 1975, and costs. Execution may issue on such judgment in the name of Credit Alliance Corporation, but the proceeds of any such levy or any voluntary payment of such judgment shall be held by the clerk of this court until Credit Alliance has procured an order of the court approving an accounting. In such order the rights of the defendant Bandy will be protected as well as the rights, if any, of the defendant Sturdevant-Van Wormer Insurance Company by reason of its payments to Bidlake, Gebert, Cooper, Harris, and Dirks.

---

1. This action is brought in the name of Credit Alliance alone, but when the court ordered that the contract purchasers be joined, Credit Alliance advised some of them that it would account to them for any proceeds of refunds belonging to them and assured the court that it would so account.