376 So.2d 1061 (1979)
AUTHEMENT'S ORNAMENTAL IRON WORKS, INC.
v.
Robert REISFELD et al.
No. 10017.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 1979.
Rehearing Denied November 19, 1979.
Writ Refused January 18, 1980.
*1062 Barry F. Viosca, New Orleans, for plaintiff-appellee.
Deutsch, Kerrigan & Stiles, Marian Mayer Berkett, New Orleans, for defendants-appellants.
Before SAMUEL, BEER and GARRISON, JJ.
GARRISON, Judge.
This is an appeal from a money judgment awarded to a subcontractor who claims a privilege under the Private Works Act, R.S. 9:4801 et seq. We affirm. The technical requirements of the statute were satisfied sufficiently to accord plaintiff a personal cause of action against the property owners. Further, although plaintiff's work was admittedly defective, the architect acquiesced in plaintiff's proposed manner of performing the work and the plaintiff was entitled to rely on the architect's supervision.
Robert I. Reisfeld, Jr. and Ann E. Reisfeld own land at 175 Brookhollow Esplanade, Harahan, Louisiana. In August 1975, the Reisfelds hired Salvaggio Construction Company, Inc. to build a one-story steel-frame building on the property, under a written but unrecorded contract. Salvaggio subcontracted with Authement's Ornamental Iron Works, Inc. to do the structural steel work. On November 24, 1975, Betty L. Moss, the architect, advised Authement that the steel frame had been welded out-of-plumb, and that the most recently completed welds were defective and would have to be redone. Authement demanded payment of its last two invoices prior to redoing its work, but Moss refused to approve them. Authement walked off the job, never to return. Neither Salvaggio nor any of his other subcontractors did any further work on the job; Salvaggio subsequently defaulted on the contract and declared bankruptcy. Another contractor completed construction of the building.
During the construction, the Reisfelds had been represented by their father, Robert I. Reisfeld, Sr., as agent under an unrecorded power of attorney. Reisfeld, Sr. was also named as their agent in the unrecorded contract with Salvaggio. However, Authement's representatives assumed that Reisfeld, Sr. actually owned the property. On December 8, 1975, Authement recorded an affidavit of claim against "Robert Reisfeld, owner" and "Salvaggio Construction Co., Inc., contractor." On February 9, 1976 Authement filed suit against the same parties, asserting a claim of $3,987.80. On June 10, 1976 Authement recorded an affidavit of lien naming Robert I. Reisfeld, Jr. and Ann. E. Reisfeld as owners, and on October 18, 1976 the petition was amended to name them as defendants. On March 27, 1977, a notice of lis pendens was recorded.
R.S. 9:4812, the statute under which Authement makes its claim, provides as follows:
§ 4812. Failure to record contract; record by claimant; period of privilege; rank.
When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, the owner or his authorized agent may file an affidavit that the work has been completed, then any person furnishing service or material or performing any labor on the said building or other work may record in the office of *1063 the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, an affidavit of his claim, which recordation, if done within sixty days after the date of the affidavit of completion of if no affidavit of completion is filed within sixty days after the date of the last delivery of all material upon the said property or the last furnishing of services or the last performance of labor upon the same, by the said furnisher of material or services or the said laborer, shall preserve a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have furnished service or material or performed any labor in connection with the said work or improvement, as his interest may appear. The said claim, recorded as aforesaid, shall preserve a privilege against the property for a period of one year from the date of its recordation, and may be enforced by a civil action in any court of competent jurisdiction in the parish in which the land is situated and such cause of action shall prescribe within one year from the date of the recordation of the claim in the mortgage records of the office of the clerk of court or the office of the recorder of mortgages. The effect of the recordation of the claim shall cease and the privilege preserved by the recordation shall perempt unless a notice of filing of a suit (giving the name of the court, the title and number of the proceedings, and date of filing, a description of the property and a reference to the recorded claim), on said claim is recorded within one year from the date of the recordation of the inscription of said claim. Such notice of filing suit shall preserve the privilege until the court in which the suit is filed shall order the cancellation of the said inscription of the said claim and the notice of the filing of suit on said claim or until the claimant authorizes the clerk of court or recorder of mortgages to cancel the said inscriptions.
The foregoing provisions shall not in any way interfere with or abrogate the right given an owner under R.S. 9:4842 to bond out any claim or claims recorded, nor shall said provisions apply to any claims recorded or lawsuits existing on July 27, 1966.
Any person furnishing service or material or performing any labor on the said building or other work to or for a contractor or sub-contractor, when a contract, oral or written has been entered into, but no contract has been timely recorded, shall have a personal cause of action against the owner for the amount of his claim for a period of one year from the aforesaid recordation of his claim, which cause of action shall prescribe one year after the date of said recordation. This shall not interfere with the personal liability of the owner for material sold to or services or labor performed for him or his authorized agent.
The said privilege shall be superior to all other claims against the land and improvements except taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor's privilege, whether arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association, if the vendor's privilege or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished. The claim for wages of a laborer for work done by him on any building, shall, when properly presented and recorded by him in accordance with the provisions of this Sub-part, preserve in his favor a privilege on the land and improvements which will prime the right of mortgagees or vendors.
This statute not only allows laborers, materialmen and subcontractors an in rem action against the property, but also gives them an action in personam against the owner. (These remedies are a departure from the ordinary rule; normally one cannot recover from a person with whom one has no contractual relationship. Thus, without the Private Works Act, subcontractors would be relegated to actions against the general contractor only.)
*1064 After trial on the merits, the district court concluded that plaintiff's lien was proper in form and timely filed, but that notice of lis pendens was not timely recorded, and therefore plaintiff had no privilege in rem. The court found, however, that plaintiff's personal right against the owners had been perfected by the filing of suit, and was not affected by the failure to timely file a notice of lis pendens. The court ruled that Authement was entitled to be paid a portion of what it claimed, and awarded judgment for $1,987.80 against Robert I. Reisfeld, Jr. and Ann E. Reisfeld. Because Salvaggio Construction Co. had been adjudicated a bankrupt, the court did not cast it in judgment. The Reisfelds perfected a suspensive appeal.
At issue on appeal is whether the plaintiff's lien was proper in form and timely recorded; and, if so, whether plaintiff can recover for work which was admittedly defective and which the owner had to have redone by another contractor. The Reisfelds contend that the December 8, 1975 lien is defective because it does not name the owners of the property correctly and because no lis pendens notice was filed within a year of the claim's inscription. They claim the June 10, 1976 lien (filed in an attempt to correct possible errors in the first lien) is invalid because it was recorded more than 60 days after the last work was done under the Salvaggio contract. They also contend that even if either lien is upheld, Authement cannot recover on the claim because the work it did was defective and the Reisfelds did not benefit from it, having to pay to have it redone.
Because the Private Works Act is an act in derogation of the general law of contract, it must be strictly construed. Lafayette Woodworks v. Boudreaux, 255 So.2d 176 (La.App. 1st Cir. 1971). However, strict construction cannot be so interpreted as to permit purely technical objections to defeat the real intent of the statute. Alside Supply Co. v. Gervais, 303 So.2d 584 (La.App. 4th Cir. 1974), writ denied 305 So.2d 545. The fundamental aim of this section is to protect materialmen, laborers and subcontractors who engage in construction and repair projects. Keller Bldg. Products of Baton Rouge, Inc. v. Siegen Development, Inc., 312 So.2d 182 (La.App. 1st Cir. 1975), writ denied 314 So.2d 736.
Although the Private Works Act does not itself prescribe a form for the affidavit of claim required by the Act, the jurisprudence has concluded, "If liens are to be strictly construed, it is obvious that there must be set forth information as to how the claim arises, against whom it is to be asserted, and the amount thereof." Hughes v. Will, 35 So.2d 241 (Orl.La.App.1948); Paul E. Riviere, Inc. v. Universal Excavators, Inc., 358 So.2d 670 (La.App. 1st Cir. 1978). Clearly, the underlying reason for these requirements is to give proper notice of potential liability to the parties involved. We conclude that in the situation before us, the affidavit of claim sufficiently satisfied the requirements, because although it did not name the owners as they were listed on the public record, it was addressed to and was properly served upon their authorized agent. Notice to an agent ordinarily is notice to the principal. Office Equipment, Inc. v. Hyde, 145 So.2d 86 (La.App. 4th Cir. 1962). Further, Mr. Reisfeld, Sr. testified that he advised his children of Authement's claim when he received notice of it. We conclude, therefore, that under the circumstances of this case, in which the lien affidavit was addressed to and was served upon the father of the true owners, he was their agent under a power of attorney, and he gave actual notice of the claim to his principals, then the affidavit's failure to show the correct names of the property owners is not a fatal defect.
We agree with the district court's conclusion that Authement's failure to record a notice of lis pendens within one year from the date the December 8, 1975 lien was inscribed cancelled the privilege against the property, but did not affect plaintiff's right to a personal action against the owners, because the personal action is perfected by the filing of suit. Lafayette Woodworks v. Boudreaux, supra. Suit was timely filed, and the petition was amended *1065 to include the correct names of the owners within one year from the date of filing. Accordingly, we conclude that Authement had a personal cause of action against Robert I. Reisfeld, Jr. and Ann E. Reisfeld under R.S. 9:4812. Since we find the lien of December 8, 1975 valid, we do not rule on the validity of the lien of June 10, 1976.
Next we address the question of how much money should be paid, if any. Both sides admit the work was defective. The conflict is over who must bear the responsibility. Authement alleges that the architect approved its work. Authement contends that, because the architect is the owner's agent, a subcontractor working at the architect's direction is entitled to recover for work performed even if the work was defective. The Reisfelds allege that Authement's allegedly defective work was done through its own lack of care, in contravention of the architect's orders, and therefore Authement breached its contract and should not be paid.
The root problem was that the anchor bolts, embedded in the concrete slab by Salvaggio, were crooked. Authement cut the steel columns and beams according to the shop drawings given them by Moss, the architect. However, because the steel was cut according to measurements on the shop drawings rather than from field measurements, when the steel columns were installed on the anchor bolts were out-of-plumb. Thus, when the time came to weld the crossbeams to the columns, there were gaps at the joining places. Authement solved this problem by "slugging" the weldsthat is, small pieces of metal were placed in the gaps to bridge them, and welding material was filled in around the slugs. This is an unacceptable welding technique. At this point Moss had the construction inspected by an independent testing laboratory, which reported that the columns were out-of-plumb, and which rejected all the welding.
Brian Authement, representing the plaintiff company, admitted that the welds were defective, but contended that the procedure was discussed with Moss ahead of time and that she acquiesced. He testified further that the welding was not satisfactory to him, but that he did it that way because Moss directed it.
Moss, in contrast, testified that she instructed Authement to cut the steel to field measurements and, had they done so, the columns would not have been out-of-plumb. She said she also instructed Authement to plumb the building before doing the final welds and, had they done so, they could have avoided slugging the welds.
Joseph Salvaggio of Salvaggio Construction Company testified that the welding was done under Moss' supervision, that Authement worked as instructed by Moss, and that Moss had approved the welding subsequently found to be defective. Salvaggio said it was he who requested Moss to have an independent inspection of the welds. He admitted that some of the anchor bolts were crooked, but said that plates installed over the bolts could have been cut to allow for the discrepancy, and it was Authement's duty to cut the steel on-site.
In sum, the testimony does not clearly support either side's contention. Both Authement's and Moss's testimony was basically self-serving, and was insufficiently supported by independent evidence. The district court concluded,
"The Court finds that Salvaggio failed to locate the `J' bolt (anchor bolts in the concrete slab) properly, making it impossible for plaintiff to do the job in any way other than which it was done. The Court is impressed that Authement could and would have completed the work satisfactorily had he been permitted to stay on the job. Some admitted inexperience on the part of the architect seriously contributed to Authement's withdrawal from the job."
The judge apparently determined that the architect's failure to fulfill her duties resulted in the subcontractor's failure. As a subcontractor, Authement was entitled to rely on the architect's supervision. This finding turns on the issue of credibility, and must be clearly wrong for this court to reverse it. The district judge committed no manifest error in finding that Authement was entitled to judgment. Arceneaux v. *1066 Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Finally, we reach the question of how much Authement should be paid. Authement prayed for $3,987.80, which included two unpaid invoices (No. 2535, for $ 371.00, and No. 2545, for $1,629.45) plus 20% of the total cost of labor and equipment (as stipulated in Authement's written agreement with Salvaggio). The district court awarded $1,987.80 (the amount prayed for, less $2,000 which Authement had received as "start-up money"). The Reisfelds contend this computation is wrong, as it does not consider separately the components of the claim. We agree, and reduce the amount awarded.
Moss had refused to approve payment of Invoice No. 2545 on the ground that the work for which it charged was defective. Considering our conclusion that Authement is not ultimately responsible for its defective work, we find that defendants owe plaintiff $1,629.45 on this invoice.
As to Invoice No. 2535 (covering November 5-7, 1975), Moss also refused to approve payment. Her Architect's Diary showed that, because of rain, no work was done on the dates for which the invoice charged. Brian Authement admitted that no work was done on November 7, but stated that they had brought a boom truck to the jobsite, then could not work because of rain. However, the truck got bogged down in the mud and they spent several hours extricating it. The invoice charged for seven hours altogether. Included, according to Authement, was a two-hour minimum charge simply for bringing the equipment to the site, as well as transportation time and extrication time. We find, however, that Authement failed to adequately support this invoice, and failed to prove the basis for the charges when no labor was actually performed. The $371.00 charge is denied.
Authement's agreement with Salvaggio, in the form of a written "Proposal" accepted and signed by Salvaggio, showed its hourly charges and stated, in addition, "A final payment of 20% of total cost of our labor and equipment to be paid within 10 days after completion of our work, all other draws to be paid weekly." The Reisfelds contend that the 20% payment was conditioned upon completion of the whole job of fabrication and welding of the steel structure. They contend that because Authement did not complete the job, it is not entitled to the 20% of cost. Authement, on the other hand, contends that it was hired simply to do welding on an hourly basis, and therefore should be paid 20% for the work it did complete (which is the amount it seeks). The proposal itself simply lists the hourly rates for labor and equipment and states who is to supply materials. Salvaggio testified that this understanding of the agreement was that Authement's duties were to cut the steel on-site, to erect it, and to weld. We conclude that plaintiff has held itself out during the entire proceeding as a subcontractor rather than as an hourly employee who could terminate its engagement at will. The testimony and facts support that Authement was subcontracted to do the entire job of steel fabrication and welding. It is true that Authement did not complete the job; however, we agree with the trial judge's conclusion that plaintiff was justified in leaving the job because of the architect's refusal to pay two invoices. Therefore, we rule that Authement is entitled to 20% of the cost of work completed, or $1,873.09.[1]
Accordingly, we affirm the judgment of the district court, but amend it to award the plaintiff $1,502.54. This amount includes payment of Invoice No. 2545 ($1,629.45) plus 20% of cost of work done ($1,873.09), minus the $2,000.00 Authement received as a start-up payment.
AMENDED AND AFFIRMED.
*1067 BEER, J., dissents in part and assigns reasons.
BEER, Judge, dissenting in part.
I respectfully dissent from that portion of the opinion which affirms the award of $1,873.09 in behalf of Authement and against Reisfeld.
Authement's agreement was with Salvaggio and was conditioned upon completion. Since there was no completion, I cannot, on the facts of this case, agree that Reisfeld should be cast for a percentage of the work done.
NOTES
[1] $7,736.00 (Completed work previously paid
 for)
 1,629.45 (Invoice No. 2545)
 $9,365.45 (Cost of work completed)
 × .20
 $1,873.09 (20% of work completed)