Denise Lawson **SEIDMAN,**
Plaintiff–Appellee,

v.

**AMERICAN AIRLINES, INC.,**
Defendant–Appellant.

No. 90–3161.

United States Court of Appeals,
Fifth Circuit.

Feb. 15, 1991.

Rehearing Denied March 26, 1991.

Howard Daigle, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant-appellant.

Sidney D. Torres, III and Gregory J. Noto, Chalmette, La., for plaintiff-appellee.

Before WISDOM, KING, and BARKSDALE, Circuit Judges.

WISDOM, Circuit Judge:

This case is an appeal by American Airlines from a damage award entered after the plaintiff, Denise Lawson Seidman ("Seidman"), accepted a remittitur of a jury award in lieu of a new trial. Because we find that the district court did not remit the damage award sufficiently, we AFFIRM in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.

## BACKGROUND

On September 2, 1987, Seidman was a passenger aboard American Airlines flight

295 between Dallas–Ft. Worth and San Francisco. After two bomb threat notes were found on the airplane,[1] the aircraft was diverted to Stockton, California, the closest airport, where it landed at 12:29 p.m. Evacuation was delayed as the personnel at the Stockton airport searched for portable air stairs to accommodate the DC–10. When it was determined that no portable stairs were available, the captain of the airplane decided to evacuate the passengers using the airplane's emergency slides.

The captain testified at trial that he did not consider the bomb threats to be a "real situation." He announced over the intercom system that if any of the passengers had written these notes as a joke, would that person please come forward. In his deposition, admitted into evidence at trial, the captain stated that he had advised the head flight attendant as to the "overall general plan, which was to calmly go over to the slides, and if [the passengers] wanted to they could sit down like you do at a playground slide, on the edge, and slide down." The captain also told the head flight attendant that he wanted a "modified evacuation," one "which is very slow and easy trying to make sure that no one was hurt." The head flight attendant testified that she did not instruct the other flight attendants of the modified evacuation procedure ordered by the captain because the flight attendants had been trained to conduct evacuations using the slides. Neither the captain nor the flight attendants gave the passengers any general instructions about the procedure for going down the slides and what to expect when they reached the bottom.

Flight Attendant Frank Ricci ("Ricci") was responsible for discharging passengers exiting at the rear door, door 4L, the door from which Seidman deplaned. Ricci testified that the training procedure for using the emergency slides is very precise; it required the attendants to tell the passengers to "jump 2 at a time, form double lines, stay close together and repeat those commands, jump, jump 2 at a time."

Seidman testified that while she was waiting to be evacuated, she was seated with her back to door 4L. She further testified that she was not rushed from her seat, nor was she jostled or injured before reaching the doorway. Seidman stated that she did not see anyone being pushed out the doorway.

When Seidman reached the doorway, she was joined by another passenger and instructed to jump. Seidman testified that she hesitated at the door and then, when Ricci yelled at her, she jumped onto the slide because she was afraid he would push her. Seidman and the other passenger joined hands, counted 1–2–3 and jumped onto the slide. In the air, they released hands, and Seidman did not touch the other passenger again. Seidman landed on the slide on her right buttock and slid the length of the slide on her right buttock. Evidencing this, her jeans were torn across the seat on the right side and she had a burning sensation in her right buttock. Upon reaching the end of the slide, she contacted the ground in a semi-standing position, impacting heavily on her right heel. An assistant on the ground grabbed her arm, assisted her in standing and guided her to walk away from the slide.

Seidman filed this diversity suit for damages as a result of injuries arising out of this incident. The jury rendered a verdict in favor of Seidman and awarded her $657,000 in damages. American Airlines filed a motion for judgment non obstante veredicto ("j.n.o.v."), or in the alternative, for a new trial. The court denied the motion for j.n.o.v. The motion for new trial was denied on the condition that Seidman accept a remittitur of the jury's verdict to $487,000. Seidman accepted the remittitur and judgment was entered accordingly. American Airlines appealed raising the following points of error: (1) the district court erred in denying American Airlines's motion for j.n.o.v.; (2) the district court erred in denying American Airlines's motion to exclude

---

**1.** The first note read, "Bomb on board. Go to Iran." The second note said, "Bomb will go off at 1:30. Turn to Iran."

evidence of other passengers being pushed from the aircraft; and (3) the district court erred in denying American Airlines's motion for new trial. We address each issue in turn.

## DISCUSSION

A. *The district court did not err in denying American Airlines's motion for j.n.o.v.*

American Airlines asserts that the district court should have granted their motion for j.n.o.v. because no substantial evidence existed to support a verdict of negligence, nor did any substantial evidence support a holding that any negligence on the part of American Airlines caused Seidman's injury. We hold that the district court did not err in refusing to grant American Airlines's motion for j.n.o.v.

■ American Airlines failed to preserve its right to file a motion for j.n.o.v. because it failed to move for a directed verdict. Federal Rule of Civil Procedure 50 prevents a district court from entering a motion for judgment notwithstanding the verdict unless the movant has first made a motion for directed verdict at the close of all the evidence.[2] "Where this prerequisite has not been satisfied, a party cannot later challenge the sufficiency of the evidence either through a j.n.o.v. motion or on appeal." *Bohrer v. Hanes Corporation,* 715 F.2d 213, 216 (5th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). This requirement serves "two essential purposes": it "enable[s] the trial

court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and [it] alert[s] the opposing party to the insufficiency before the case is submitted to the jury, thereby affording it an opportunity to cure any defects in proof should the motion have merit." *Id.* at 217.

This Court has not required strict compliance with Rule 50(b) and has excused technical noncompliance with it in appropriate circumstances.[3] In this case, however, this Court cannot excuse American Airlines's noncompliance with Rule 50(b) because we find that the essential purposes of the rule have not been met.

American Airlines states that, during trial, at the close of the case, the district judge instructed both parties to join him in chambers for a jury instruction conference. At that time, American Airlines asserts that it advised the court that it would be moving for a directed verdict. The plaintiff responded that she too requested a directed verdict. The district court indicated that both motions lacked sufficient merit and would be denied. None of this is in the record. Indeed, the record reflects the following exchange:

The Court: I understand you all want to make some motions.

Mr. Daigle: Your Honor, defense has no motions.

The Court: Does plaintiff have any motions?

Mr. Torres: Yes, Your Honor, the plaintiff would move for a directed ver-

---

2. Fed.R.Civ.P. 50(b) provides:
 **Motion for Judgment Notwithstanding the Verdict.** Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than ten days after entry of judgment, a party who has moved for directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict.

3. *See Miller v. Rowan Companies,* 815 F.2d 1021, 1024–25 (5th Cir.1987) (defendants's failure to renew motion for directed verdict did not

preclude j.n.o.v. where trial court reserved its ruling on defendants' motion for directed verdict and subsequent evidence introduced was not related to the motion); *Jones v. Benefit Trust Life Ins. Co.,* 800 F.2d 1397, 1401 (5th Cir.1986) (moving party's objection to the court's jury instructions on the grounds that there was no evidence to support a claim treated as motion for directed verdict on that claim, thereby preserving right to raise issue in motion for j.n.o.v.); *Bohrer v. Hanes Corporation,* 715 F.2d at 217 (technical noncompliance of defendants who moved for a directed verdict after the plaintiffs rested their case but failed to renew the motion at the close of all the evidence was excused). *See also Hinojosa v. Terrell,* 834 F.2d 1223, 1228 (5th Cir.1988).

dict in the matter on the basis that we have established that Mrs. Seidman has sustained injury as a fare-paying passenger aboard this flight; ...

This Court is restricted to the record. American Airlines had adequate opportunity to move for directed verdict, if not at the close of Seidman's case, certainly at the close of all the evidence, when Seidman made such a motion. Consequently, we find that American Airlines's motion for j.n.o.v. lacked the proper predicate and that circumstances which would allow the motion despite non-compliance with the rule do not exist.

■ Since American Airlines did not move for a directed verdict, our review of the district court's denial of its motion for j.n.o.v. is extremely limited. "In such cases 'our inquiry is restricted to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in manifest miscarriage of justice.'" *Hinojosa v. Terrell*, 834 F.2d 1223, 1228 (5th Cir.1988) (quoting *Stewart v. Thigpen*, 730 F.2d 1002, 1007 (5th Cir.1984)).

■ We find that there was such evidence to support the jury's verdict in this case. Under Louisiana law, when a fare-paying passenger on an airline establishes that she failed to reach her destination safely, she has established a *prima facie* case of negligence. "At this point, the carrier must show that the incident did not occur, that it was without the slightest degree of negligence in discharging the plaintiff, or that any negligence on its part was not the legal cause of the plaintiff's injury." *Schwamb v. Delta Air Lines, Inc.*, 516 So.2d 452, 461 (La.Ct.App.1987).

Based on the evidence presented at trial, the jury could reasonably have found that Seidman, a fare-paying passenger, did not reach her destination unharmed. Moreover, evidence was presented that could support a jury determination that American Airlines was negligent in its discharge of

Seidman and that this negligence caused her injury. Testimony was presented that the captain did not believe the bomb threat to be real and had ordered a modified evacuation, instructing that passengers could sit and scoot down the slides rather than jump. This information was not passed on to the flight attendants at the rear door who conducted a full-fledged evacuation. The plaintiff also presented testimony that, although jumping may be just as safe or even safer than scooting down the slides, people are generally reluctant to jump and would prefer to scoot. People exiting the first class area of the plane, and perhaps other areas, were allowed to sit and scoot. In addition, no announcement of the general procedures for the evacuation was ever made to the passengers, nor were they told what to expect when they reached the bottom of the slide. Accordingly, we find that evidence was presented at trial to support the jury's verdict, and the district court did not err in refusing to grant American Airlines's motion for j.n.o.v.

B. *The district court did not err in denying American Airlines's motion in limine to exclude testimony of other passengers who exited the aircraft.*

American Airlines asserts that the jury's verdict was the result of passion and prejudice stirred in the jury by the inflammatory testimony from other passengers that two other passengers besides plaintiff, including a "little old lady," had been pushed out of the plane. At trial, American Airlines made a motion in limine to exclude this testimony and also objected to this testimony during trial. The district court allowed the testimony of the other passengers on the condition that they had exited through the same door as the plaintiff.[4]

■ This Court reviews evidentiary rulings only for abuse of discretion, *see Herrington v. Hiller*, 883 F.2d 411, 414 (5th Cir.1989), and will "reverse a judgment on the basis of evidentiary rulings only where

---

**4.** American Airlines now suggests, based on interviews with these passengers after the evacuation, that these passengers may not have exited

through the same door as Seidman. The record indicates that this possibility was not fully explored by American Airlines at trial.

the challenged ruling affects a substantial right of a party." *Jones v. Benefit Trust Life Ins. Co.,* 800 F.2d at 1400.

"Relevancy is the threshold determination in any decision regarding the admissibility of evidence." *Koloda v. General Motors Parts Div., General Motors Corp.,* 716 F.2d 373, 375 (6th Cir.1983). If evidence is not relevant, it is not admissible. *See* Fed.R.Evid. 402. Relevant evidence is defined by Fed.R.Evid. 401 as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Evid. 403.

█ The first question we must resolve is whether the testimony of other passengers who exited the airplane from the same door as Seidman was relevant to this case. We find that it is relevant. Seidman testified that she was not pushed but that she jumped, when commanded by flight attendant Ricci, because she was afraid that Ricci would push her if she did not jump. Seidman did not testify to observing any other passengers being pushed; indeed, she testified that her back was to the door until it was her turn to move to the rear of the airplane. Moreover, the testifying passengers did not see Seidman evacuate and offered no testimony of her evacuation.

Seidman's argument is that it was not necessary for her to have actually seen Ricci push someone in order to perceive, from his demeanor and other impressions, that he might be inclined to push her. Contrary to American Airlines's assertions, this Court finds that it is extremely plausible for someone aboard an airplane undergoing emergency deplaning procedures to have such fear, despite not having seen any other passengers being pushed. On the other hand, this Court finds that Seid-

man's fear could not bear any relation to the incidents of the other passengers allegedly being pushed since Seidman was unaware that such incidents took place. The testimony of the other passengers, however, was relevant in that it served to confirm the correctness of Seidman's impression about Ricci's propensity to push her; this testimony added support to Seidman's claims, which might otherwise have been summarily dismissed by the jury as the normal, but groundless, fears of a passenger in such an emergency situation.

Second, we must determine whether this evidence should have been excluded under Fed.R.Evid. 403. After a review of the record, this Court finds that the testimony of the other passengers was not so highly prejudicial as to inflame the passion of the jurors and influence their award against American Airlines.

The passenger who testified about the "pushing of the little old lady" did not dwell on that testimony, nor did she describe it as a particularly violent or disruptive incident.[5] The "little old lady" herself did not testify. In addition, there was testimony by both of the other passengers describing the "push" by the flight attendants as being administered with the attendant's arm on the passenger's left-hand shoulder. This was not a description of a passenger pleading not to be sent down the slides who was forcefully pushed off the plane by an attendant. Instead, the description was one of reluctant passengers being compelled to leave the plane in an emergency situation by the flight attendant's demeanor, authoritative commands, and, if necessary, physical assistance. We believe that a jury could make this distinction.

We find that American Airlines was not unfairly prejudiced by the admission of the testimony of other passengers on the airplane who exited out of the same door as Seidman. The district court did not abuse its discretion in admitting such testimony.

---

**5.** The crux of the testimony was that "an elderly woman was pushed who was complaining about a hip condition."

**1140**

**C.** *The district court did not err in denying American Airlines's motion for new trial with the condition that Seidman accept a remittitur.*

■ Fed.R.Civ.Pro. 59 allows a trial court to grant a new trial based on its assessment of the fairness of the trial and the reliability of the jury's verdict. Rule 59 does not specify or limit the grounds necessary to support such a decision. A new trial may be granted if the trial court finds that "the verdict is against the weight of evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed...." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir.1985). When a new trial is requested because the amount of the verdict is excessive or inadequate, the motion should not be granted unless the verdict is against the great weight, not merely the preponderance, of the evidence. *See Jones v. Wal–Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir.1989).

■ This Court can overturn a decision denying a motion for a new trial only if it finds that the district court abused its discretion. *Id.* In reviewing the district court's actions, the evidence is viewed in the light most favorable to the jury verdict. *See Cobb v. Rowan Companies, Inc.*, 919 F.2d 1089, 1090 (5th Cir.1991). The district court abuses its discretion by denying a new trial only when there is an "absolute absence of evidence to support the jury's verdict." *Id.*, (citing *Irvan v. Frozen Food Express, Inc.*, 809 F.2d 1165, 1166 (5th Cir.1987)). *See also Stokes v. Georgia–Pacific Corp.*, 894 F.2d 764, 769 (5th Cir. 1990).

■ The trial court in this case, noting that the amount of damages awarded was excessive, conditioned the denial of a motion for new trial upon the acceptance by Seidman of a remittitur. *See Bonura v. Sea Land Service, Inc.*, 505 F.2d 665, 669 (5th Cir.1974). Where a trial court has ordered a remittitur, the standard of re-

view is strict, and the trial court will be reversed only if the party opposed to the remittitur shows an abuse of discretion on the part of the judge. *See Bonura,* 505 F.2d at 669.

■ The district court found that the verdict was not a result of the passion and prejudice of the jury but was merely excessive. We agree. We find that the district court did not err in reducing the jury's award; in fact it should have remitted the award more than it did. Under the rule in this circuit, where, as in this case, the jury was not actuated in its verdict by passion or prejudice, the appellate court may consider ordering a conditional remittitur to the maximum amount that the evidence can support. *See Peters v. T.G. & Y. Stores Co.*, 707 F.2d 227, 230 (5th Cir.1983) and citations therein.

The district court based its award on the testimony of Seidman's economist who estimated plaintiff's past loss of wages at $9,000 and her future loss of earning capacity at $145,000.[6] The district court also noted the evidence that Seidman could have incurred past medical expenses of up to $83,000. Since no evidence was presented as to any specific amount of future medical expenses, the court concluded that any amount awarded by the jury for future expenses would be speculative.[7] The district court found that the highest possible award for pain and suffering and permanent disability could be $250,000. The district court concluded that the jury's verdict as to damages was contrary to the weight of evidence and denied the motion for new trial on the condition that Seidman accept a remittitur of the award in the amount of $487,000, consisting of $154,000 for past lost wages and loss of future earning capacity, $83,000 for medical expenses and $250,000 for non-economic losses.

This Court has often stated that in the area of evaluating whether a jury's award is excessive, "the appellate court should step lightly or not at all." *See In re Air-*

---

**6.** This was his highest estimate.

**7.** Louisiana law forbids an award of damages based on speculation. *See Breaux v. Schlumber-*

*ger Offshore Services,* 817 F.2d 1226, 1232 (5th Cir.1987).

*Crash Disaster Near New Orleans,* 767 F.2d 1151, 1155 (5th Cir.1985); *De Centeno v. Gulf Fleet Crews, Inc.,* 798 F.2d 138, 141 (5th Cir.1986). A jury's award should not be disturbed unless it is "entirely disproportionate to the injury sustained." *Caldarera v. Eastern Airlines Inc.,* 705 F.2d 778, 784 (5th Cir.1983). Pain and suffering and non-economic considerations are, however, "to a large degree, not susceptible to monetary quantification, and the jury thus necessarily has especially broad leeway." *Simeon v. T. Smith & Son, Inc.,* 852 F.2d 1421, 1427 (5th Cir.1988). Nevertheless, this Court recognizes that "the sky is not the limit for jury verdicts, even those that have been once reviewed." *Caldarera,* 705 F.2d at 784. *See also Simeon v. T. Smith & Son, Inc.,* 852 F.2d at 1427; *Osburn v. Anchor Laboratories, Inc.,* 825 F.2d 908, 920 (5th Cir.1987). This Court has stated its position as follows:

> [w]hen a jury's award exceeds the bounds of any reasonable recovery, we must suggest a remittitur ourselves or direct the district court to do so. Our power to grant a remittitur is the same as that of the district court. We determine the size of the remittitur in accordance with this circuit's "maximum recovery rule," which prescribes that the verdict must be reduced to the maximum amount the jury could have properly awarded.
>
> *Caldarera,* 705 F.2d at 784 (footnotes and citations omitted).

One way to apply the "maximum recovery rule" is to look at cases in the recent past that have properly applied Louisiana damages law in order to find the *greatest* amount that they have awarded for similar injuries. *See Zeno v. Great Atlantic and Pacific Tea Co.,* 803 F.2d 178, 181 (5th Cir.1986). Although this Court has never considered itself to be rigidly circumscribed by past decisions, we have often found it useful to consider cases involving comparable injuries in evaluating jury awards. *See Williams v. Chevron U.S.A., Inc.,* 875 F.2d 501, 506 (5th Cir.1989). This Court must also consider carefully the specific circumstances of each case before it in determining an award.

We find that the award of $145,000 for future loss of earning capacity was excessive and not supported by the evidence in the light of the fact that there was testimony that Seidman's earning capacity in the year before her surgery was about $1,000 less than she could earn with full-time minimum wage employment. Moreover, no one testified that Seidman would not be able to return to employment; in fact, her physician testified that she could work as an office manager in the future. Accordingly, we reduce this award to $85,000. *See Thibodaux v. Acme Truck Lines, Inc.,* 443 So.2d 716, 719 (La.Ct.App.1983) (award for future wage loss reduced to reflect credit for minimum wage employment where plaintiff's own medical expert testified that plaintiff was capable of working). Furthermore, based on the awards rendered in comparable cases, as well as the fact that Seidman had a pre-existing spinal condition, we find that the highest possible award that can be made for Seidman's pain and suffering, permanent disability and other non-economic losses is $100,000.[8] We af-

---

8. This is a sampling of the cases we considered in determining an appropriate damage award. We considered the injuries sustained by the plaintiffs who received higher damage awards than Seidman to be more serious than Seidman's injuries. *See Holmes v. J. Ray McDermott & Co., Inc.,* 734 F.2d 1110 (5th Cir.1984) (plaintiff with herniated lumbar disc, ten to fifteen percent disability, and ongoing depression, whose pain had been partially alleviated by an electrical nerve stimulator received award of less than $180,000 for pain and suffering); *Thibodaux v. Acme Truck Lines, Inc.,* 443 So.2d 716 (La.Ct.App.1983) (plaintiff with two ruptured discs, who was in constant pain and who had to take three or four hot showers a day to relieve the pain and who would never again be able to work as a farmer and whose activities were very restricted, received $350,000 in general damages); *Champagne v. Lee,* 470 So.2d 378 (La.Ct. App.1985) (woman who suffered from recurring herniated disc requiring two surgeries, had 5– 25% disability and whose conjugal relationship with her husband was so affected that she could not sleep in the same bed as her husband received $350,000 for pain and suffering); *Williams v. Chevron,* 875 F.2d at 507 (plaintiff with herniated disc who suffered from depression received $200,000 for pain and suffering); *Redondo v. Consolidated Freightways Corp.,* 529 So.2d 1296 (La.Ct.App.), *writ denied,* 533 So.2d 363 (1988) (plaintiff, with a ruptured herniated

firm the district court's award of $9,000 for Seidman's past loss of wages and $83,000 for her past medical expenses.

We hold that $277,000 is the maximum award that should have been made to Seidman in this action. If Seidman does not accept a remittitur on this basis, the district court must hold a new trial on damages.[9]

This case is AFFIRMED in part, REVERSED in part and REMANDED to the district court for proceedings in accordance with this opinion.

lumbar disc, two other abnormal discs, laminectomy, and 15% permanent impairment received $100,000 general damages for pain and suffering); *Garrett v. Celino*, 489 So.2d 335 (La.Ct. App.1986) (plaintiff, with herniated disc, dissolved by injection, and 10–15% permanent dis-

ability, received $165,000 in damages for pain and suffering).

9. *See Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir.), *cert. denied*, 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988); *Williams v. Chevron U.S.A., Inc.*, 875 F.2d at 506.