United States Court of Appeals,
Fifth Circuit.
No. 90-3448.

LEWIS R. CRIST, Director, Division of Insurance, Department of Economic Development, State of Missouri, Acting as a Domiciliary Receiver of Transit Casualty Company in Liquidation, Plaintiff-Appellant,

v.

DICKSON WELDING, INC., et al., Defendants-Appellees.

April 10, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REYNALDO G. GARZA, GARWOOD, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Plaintiff brought this diversity suit as receiver for an insolvent insurance carrier, Transit Casualty Company, against a Transit insured, Dickson Welding, Inc., for additional premiums allegedly earned under two policies. Dickson Welding denied that more premiums were due asserting several defenses and, alternatively, impleaded its broker, Alexander & Alexander ("A & A"). The jury found Transit barred from recovering additional premiums. The district court entered judgment for Dickson Welding and dismissed all third-party claims. Transit appeals, and A & A moves to dismiss the appeal as to A & A. For the following reasons, we reverse the judgment on the jury verdict and grant A & A's motion.

I. THE CLAIMS, DEFENSES, AND ASSIGNED ERRORS

The Transit policies provide for an advance premium based on

estimated exposures and for an adjustment of premium based on actual exposures as determined from an audit after the policy period. Although Dickson Welding willingly paid the advance premiums, it refused to pay additional premiums claimed pursuant to audits. Transit's receiver brought this suit against Dickson Welding for the additional premiums.

The issues on this appeal concern Dickson Welding's defenses. Maddox, an agent working for Dickson Welding's broker, A & A, allegedly promised Dickson Welding coverage under policies with a fixed premium, not subject to adjustment or audit. Dickson Welding's first defense was reformation: Dickson Welding argued that the policies should be reformed to reflect the flat-rate premiums promised by Maddox and A & A. Reformation was a bench issue, and the court rejected the defense: it would not rewrite the policy to reflect a flat-rate because it found neither mutual mistake nor mistake by one party and fraud by the other.

Dickson Welding asserted three other defenses that went to the jury: equitable estoppel, apparent authority, and in pari delicto. In the estoppel defense, Dickson Welding asserts that it justifiably relied in good faith on some representation of Transit or Transit's agent, Miro and Associates, and that Dickson Welding acted to its detriment because of that reliance. Transit moved for a directed verdict on Dickson Welding's estoppel defense, but the court denied the motion. The apparent-authority defense concerns whether Transit is bound by the actions of its "apparent" agent,

Miro:  Dickson Welding asserts that because it was justified in assuming that Miro had the authority to perform acts to bind Transit, Transit is bound by Miro's acts.  The defense of in pari delicto, meaning "of equal fault," bars a plaintiff from recovering damages if his losses are substantially caused by activities which the law forbids him to do.

Transit assigns as errors the denial of its motions for directed verdict, for a judgment notwithstanding the verdict, and for a new trial.  Transit also asks us to consider whether the verdict was erroneous and unreasonable.[1]  Transit also claims that the jury was improperly instructed regarding reasonable reliance, which is an essential element of both the estoppel and apparent authority defenses.

II. THE MOTIONS TO TAKE THE CASE FROM THE JURY

A. Estoppel.

At the close of Transit's evidence against Dickson Welding, Transit moved for a directed verdict on estoppel and waiver, urging that neither could be a defense, apparently because of the lack of evidence of the element of reasonable reliance.[2]  The court

[1]This issue was raised before the district court in a motion for new trial.  6 R. 1442.  We do not review verdicts directly. *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978). Accordingly, we consider this challenge to the verdict as part of the motion for new trial.

[2]After the district court ruled against Dickson Welding on the bench issue of reformation, Dickson Welding's attorney asked whether the ruling encompassed the waiver or estoppel issue.  The

initially granted the motion for directed verdict, rejecting waiver and finding a different essential element of estoppel lacking: the good faith of Dickson Welding (through its president, Marcus Dickson). Both the good faith of the party seeking to invoke the doctrine of equitable estoppel and reasonable reliance on the representation are required for application of the defense. *See Wilkinson v. Wilkinson,* 323 So.2d 120, 126 (La.1975); *Westenberger v. Louisiana Dep't of Educ.,* 333 So.2d 264, 271 (La.Ct.App.1976). The trial judge was evidently not impressed with the suggestion that there was no evidence of reasonable reliance, as he did not mention reasonable reliance in his ruling.

After a recess, the district judge rescinded his ruling in order to consider the evidence in Dickson Welding's cross-claim

---

motion on estoppel was raised in the following exchange:

> THE COURT: Well, to the extent that [estoppel or waiver] may be a jury issue, it seems ... Mr. Christy ... that you are moving for a directed verdict on the issue of estoppel.
>
> MR. CHRISTY: No.
>
> THE COURT: Mr. de Klerk [Transit's attorney], are you moving for a directed verdict?
>
> MR. DE KLERK: Yes, Your Honor.
>
> THE COURT: Now, tell me why.
>
> MR. DE KLERK: ... [T]he estoppel and the waiver argument is not something that can be used as a defense under the circumstances of this case and bearing in mind the evidence that's been heard.
>
> THE COURT: ... Did you have something else?
>
> MR. DE KLERK: Your Honor, I just wanted to mention the concept of reasonable reliance once again.

against A & A.  At the close of all the evidence, the court assumed that all motions were renewed and denied Transit's motion for directed verdict on the estoppel question.  Transit later moved for a judgment notwithstanding the verdict, reiterating its argument on estoppel and adding an argument on apparent authority.

We review the rulings on the motions for directed verdict and judgment notwithstanding the verdict de novo, under the same standard applied by the district court:  under either motion, "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict," then the motion should be granted.  *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

As to the defense of estoppel, we agree with the district court that reasonable people could indeed differ on the question of estoppel, particularly the good faith of Dickson Welding (as represented by Mr. Dickson), which was the basis of the court's initial ruling.  For example, Maddox of A & A testified that he relied on representations of Miro employees that Transit policies were being sold with fixed-rate premiums, and Mr. Dickson testified that he relied on Maddox.  The jury no doubt resolved the question of Dickson Welding's good faith by assessing Mr. Dickson's demeanor and credibility.  Additionally, an expert testified that audits were not mandatory and could be waived, although there was conflicting testimony.  Finally, some evidence showed Miro often waived audits notwithstanding standard-form language requiring an

audit.

Because reasonable persons could differ regarding Dickson Welding's good faith and the reasonableness of its reliance, the trial court correctly allowed the defense of estoppel to go to the jury.

B. Apparent Authority.

Transit did not move for a directed verdict in its favor on Dickson Welding's defense of apparent authority, but did move for a judgment n.o.v. on that defense. In its motion for judgment n.o.v. and on this appeal, Transit attempts to tie the apparent-authority defense to the estoppel defense, on which it did move for directed verdict: Transit urges that the facts mandate a judgment notwithstanding the verdict whether the issue is "justifiable reliance" for estoppel or "reasonable reliance" for apparent authority.

If a party has not moved for a directed verdict on an issue yet seeks judgment n.o.v. on that issue, our review is extremely limited. *Seidman v. American Airlines,* 923 F.2d 1134, 1138 (5th Cir.1991); *see also* Fed.R.Civ.P. 50(b).[3] In such cases "our inquiry is restricted to whether there was *any* evidence to support

---

[3]The Rule in effect at the time of trial provided that "a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict." Fed.R.Civ.P. 50(b) (amended 1991).

the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in manifest miscarriage of justice." *Seidman,* 923 F.2d at 1138 (citing *Hinojosa v. City of Terrell, Tex.,* 834 F.2d 1223, 1228 (5th Cir.1988), *cert. denied,* 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989)) (emphasis in original).

Apparent authority is a judicially created concept of estoppel which operates in favor of a third party (Dickson Welding) seeking to bind a principal (Transit) for the unauthorized act of an apparent agent (Miro). *See Boulos v. Morrison,* 503 So.2d 1, 3 (La.1987). For the doctrine of apparent authority to apply, the principal must first act to manifest to an innocent third party the alleged agent's authority. Second, the third party must *rely reasonably* on the manifested authority of the agent. *Id.* The testimony that audits could be waived and that Miro often waived audits in spite of contractual language requiring audits constitutes evidence that would support a finding that Dickson Welding's or Maddox's reliance on a representation that the audits were waived was reasonable. Accordingly, the motion for directed verdict on the issue of apparent authority was also properly denied.

### III. THE JURY CHARGE ERROR

Transit next asserts that the court improperly charged the jury about reasonable reliance, an element of both the estoppel and apparent-authority defenses. Dickson Welding urges that we need

not consider this assigned error because the jury may well have based its judgment on the in pari delicto defense.  Thus, Dickson Welding argues, because an independent basis for the verdict supports the judgment, we need not consider the errors assigned by Transit with respect to the other two defenses.

A. The Verdict and Scope of Our Review.

The jury interrogatory did not distinguish among the three defenses, providing simply:

> Is Transit barred from recovering additional premiums from Dickson [Welding] even though the insurance policies in question provided for an adjustment of premiums by audit?
>
> YES  T
>
> NO____

When two or more claims are submitted to a jury in a single interrogatory, a new trial may be required if one of the claims was submitted erroneously, because " "there is no way to know that the invalid claim ... was not the sole basis for the verdict.' " *Braun v. Flynt,* 731 F.2d 1205, 1206 (5th Cir.1984) (quoting *United N.Y. & N.J. Sandy Hook Pilot Ass'n v. Halecki,* 358 U.S. 613, 619, 79 S.Ct. 517, 520, 3 L.Ed.2d 541 (1959);  *see also Smith v. Southern Airways,* 556 F.2d 1347 (5th Cir.1977) (general verdict cannot stand if one of three alternative theories of recovery is not supported by evidence);  *Ratner v. Sioux Natural Gas Corp.,* 770 F.2d 512, 518 (5th Cir.1985) (general verdict possibly resting upon a theory that lacks adequate support in the record must be set aside).  Because

the trial court did not ask the jury to answer a special interrogatory on each theory of defense, we cannot determine on which defense Dickson Welding succeeded. Accordingly, we must verify that the jury was properly charged as to the apparent-authority and estoppel defenses, because either one might have been the sole basis for the verdict.

B. Preservation of Error and the Standard of Review.

The next questions are whether Transit preserved its right to appeal the jury charge issue by timely objection and, if so, under what standard of review we examine the alleged error. "No party may assign as error ... the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. Because the purpose of this rule is to enable the trial court to correct any error it may have made before the jury begins its deliberations, the objection and grounds generally must be stated after the charge and before the jury retires. *Lang v. Texas & Pac. Ry.,* 624 F.2d 1275, 1279 (5th Cir.1980). In this case, Transit did not object to the charge about reasonable reliance after the jury was charged.

This failure to object may be disregarded, however, if Transit's position has been previously made clear to the court and it is plain that a further objection would have been unavailing. *See Lang,* 624 F.2d at 1279. We believe the exception applies in

this case.  During the charge conference Transit objected to the estoppel and apparent-authority charges on the basis that Dickson Welding should be bound not only by the reasonable reliance of its president, Marcus Dickson, but also by the reasonable reliance of Dickson Welding's agent, Paul Maddox of A & A.

Objections at the charge conference do not automatically relieve counsel of the duty to object at the close of instructions before the jury retires.  *See Little v. Green,* 428 F.2d 1061, 1070 (5th Cir.), *cert. denied,* 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970).  Allowing objections again after counsel has heard the entire charges is an admirable practice and gives the judge the opportunity to modify his charge in the light of objections informally stated at the charge conference.  *Id.*  In this case, however, the judge articulated his desire to expedite the taking of objections at the charge conference and intimated that this was the only opportunity counsel would have to object to the proposed charges.[4]  Under the circumstances, we believe that Transit's

---

[4]The judge opened the charge conference instructing counsel,

> "[I]n the interest of expediting this, I want to take one by one comments and objections or recommended improvements to the Court's intended instructions to the jury ... then I will rule on your special requested charges."

When Crist's attorney asked for rebuttal after hearing other counsel's objections, the Court advised,

> Once you pass, you pass.  You have had adequate opportunity to tell me what objections you had to the charge.  We don't just keep having a round-robin.  If I give you more time, then I will have to give everybody else more time.  That's the whole purpose of taking your objections up front and your comments and your

position was previously made clear to the court, and it was plain that a further objection would have been unavailing. Accordingly, the assigned error is preserved for review.

In evaluating a jury charge we view the instruction as a whole in the context of the entire case. The judge must instruct the jurors fully and correctly on the law applicable to the case, including defensive theories raised by the evidence. *Powell v. Rockwell Int'l Corp.,* 788 F.2d 279, 284 (5th Cir.1986); *see also Pierce v. Ramsey Winch Co.,* 753 F.2d 416, 424-25 (5th Cir.1985).

C. The Charge on Reasonable Reliance.

The court instructed the jury that for Dickson Welding to prevail on its estoppel defense, Dickson Welding must establish that it was acting in good faith and justifiably relied on some representation by Transit or Transit's agent, Miro. For the apparent authority defense, the court charged,

> if you find that Dixon [*sic* ] Welding was justified in assuming that Miro had the authority to act for Transit, then you may find that Transit is bound by the acts of Miro.
>
> You are further instructed, however, that Dickson may rely on the acts of Miro only if you find from the evidence that it was reasonable for Dickson to do so. If you find that Dickson's reliance on something that Miro said or did was not reasonable, then Transit cannot be bound by Miro. If Dickson's reliance on something that Miro did or said wasn't reasonable, then Transit can't be bound by something that Miro did.

---

requested charges.

The charges do not mention Maddox, and he was the liaison between Transit's agent (Miro) and Dickson Welding's president, Marcus Dickson. Maddox, an insurance agent working for Dickson Welding's broker, A & A, was the only party with whom Mr. Dickson had any contact, and Mr. Dickson testified that he relied on Maddox. Miro never discussed the policies with Mr. Dickson but only with Maddox.

Transit argues that in view of the facts that Maddox was Dickson Welding's agent and that Miro's contact was with Maddox, the court should have charged the jury on A & A's status as Dickson Welding's agent: this way the jury would consider not only the reasonable reliance of Dickson Welding, the more sympathetic insurance customer, but also the reasonableness of the more sophisticated Maddox, the insurance professional, whom the jury would hold to a higher standard. We agree. As principal, Dickson Welding is charged with constructive knowledge of facts pertinent to transactions by its agent which the agent knew or could have ascertained by reasonable diligence. *See Mayer v. Ford,* 12 So.2d 618 (La.Ct.App.1943); *Bank of La. v. Argonaut Ins. Co.,* 248 So.2d 349, 352 (Ct.App.La.1971) (*citing Culver v. Culver,* 188 La. 716, 178 So. 252 (1937)). The charge given did not make it clear that Maddox was Dickson Welding's agent, such that his knowledge would be imputed to Dickson Welding. The charges as a whole misled the jury because they focused solely on Mr. Dickson's reliance and did not permit the jury to take into account Maddox's knowledge. Because reasonable or justifiable reliance was an essential element

of both defenses and because Maddox's awareness of problems with the policy rate was not a consideration under the charges given, the error was not harmless.

We reverse the judgment insofar as it relates to the jury verdict and remand for a new trial.[5]

## IV. THE MOTION FOR NEW TRIAL

The issue of reformation, which was ruled on by the judge, has not been appealed. The assigned errors in the ruling on the motion for new trial relate only to jury issues and not to the reformation issue. Ordering a new trial on the jury charge error moots Transit's challenges to the denial of its motion for new trial.

## V. ENFORCEMENT OF THE CONTRACT

Finally, Transit urges that the judge's ruling on reformation of the contract should have been dispositive of the entire case as a matter of law. At the close of all the evidence in Transit's case against Dickson Welding, the court refused to reform the insurance contracts to flat-rate policies; the other three defenses raised by Dickson Welding were thereafter submitted to the jury. According to Transit, however, there was nothing left for the jury to decide once reformation was denied: the district court should have enforced the contract as a matter of law.

---

[5]Transit asks us to remand the entire case for a new trial, but the reformation issue was not appealed, so it need not be retried.

But when did Transit ask the district court to so enforce the contract?  As to this issue on appeal, Transit is vague about what error of the trial court it wishes us to review.  With the exception of the motions discussed above, Transit did not move to take defenses away from the jury upon the court's ruling on reformation.  We found no error with the trial judge's rulings on those motions concerning the estoppel and apparent-authority defenses.

As to the defense of in pari delicto, Transit is essentially asking this Court to strike the defense for the first time on appeal.  Transit did not move to strike this defense in the district court or move for a directed verdict on the defense.  Neither did Transit object to the judge's proposed jury charge on in pari delicto, object to the jury charge as given, or move for a new trial on the issue.[6]

"We will consider an issue raised for the first time on appeal

_____

[6]Counsel's "submit[ting] that pari delicto is not an issue vis-a-vis me" during preliminary discussions at the charge conference does not preserve the error for review as would an objection, particularly in view of counsel's silence when the court thereafter proposed a revised instruction on the defense. The judge might have assumed that the instruction as revised was no longer objectionable.  Similarly, the trial judge's hypothetical statement during the charge conference that he "couldn't direct a verdict on that issue" does not create such a motion for directed verdict by Transit, because no such motion was ever offered.

Although counsel was apparently surprised by application of the in pari delicto defense to Transit at the charge conference, ample opportunity to object to the defense at the trial level existed.

only if the issue is purely a legal issue and if consideration is necessary to avoid a miscarriage of justice." *Citizens Nat'l Bank v. Taylor (In re Goff),* 812 F.2d 931, 933 (5th Cir.1987). In view of our remand for retrial, the issue can be addressed by the trial court, so our consideration of the issue is not necessary to avoid a miscarriage of justice. We note, however, that the ruling on reformation simply determined that the contract would not be rewritten. It did not preclude the possibility of another legal defense applying to the claim under the policy as written.

## VI. A & A's MOTION TO DISMISS

A & A moves to dismiss the appeal against it urging that no appeal has been taken from the judgment in its favor. Dickson Welding filed a third-party complaint against A & A seeking recovery for any amount Dickson Welding might be adjudged liable to pay Transit as additional premiums. As to this claim, the judgment provided simply that "all third-party complaints and counter-claims are hereby DISMISSED."

Only Crist (for Transit) filed a notice of appeal, and this appeal was "from the final judgment entered in favor of defendant, Dickson Welding, Inc." The next question we face is whether Dickson Welding's failure to file a notice of appeal of the dismissal of its third-party claim precludes further review of that dismissal.

A & A argues that the judgment dismissing the third-party

claim against it is final, because Dickson Welding did not file a protective appeal within the time limits of Federal Rule of Appellate Procedure, Rule 4(a)(3).[7] Dickson Welding asserts that a Rule 4(a)(3) notice of a cross-appeal or other separate appeal is only a rule of practice which can be suspended and is not jurisdictional, citing *United States v. Tabor Court Realty Corp.,* 943 F.2d 335, 342-43 (3rd Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1167, --- L.Ed.2d ---- (1992). This Court, too, has noted that appellate courts have the discretionary power to retain all parties on remand in order to do justice. *See Anthony v. Petroleum Helicopters, Inc.,* 693 F.2d 495, 497 (5th Cir.1982).

The continued viability of the principle recognized in *Anthony* is questionable, however, in view of *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). *See Stockstill v. Petty Ray Geophysical,* 888 F.2d 1493, 1496 (5th Cir.1989) (dicta). The *Stockstill* panel observed that it is doubtful in view of *Torres* that we have jurisdiction to review the district court's dismissal of a third-party defendant, if no notice of appeal was filed as to the dismissal of that third-party claim. *Stockstill,* 888 F.2d at 1497 (dicta).

---

[7]Rule 4 provides,

> If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.

Fed.R.App.P. 4(a)(3).

Like the *Stockstill* panel, we need not decide whether *Torres* changed the law articulated in *Anthony* that we may retain parties necessary to insure an equitable resolution at trial. Even under *Anthony,* the rule was that parties had to file a protective notice of appeal, unless the appealed decision could be read as not adverse to the party who failed to appeal. *Stockstill,* 888 F.2d at 1497; *Anthony,* 693 F.2d at 498.[8]

The dismissal of Dickson Welding's third-party claim against A & A was adverse to Dickson Welding. Although Dickson Welding initially had no reason to appeal because it received a favorable judgment as to Transit's claims, Transit's appeal raised the possibility of reversal. Dickson Welding was thereby put on notice that it might be subject to adverse consequences from the dismissal of A & A. *See Anthony,* 693 F.2d at 498; *Stockstill,* 888 F.2d at 1497. Dickson Welding does not fall within the exceptional situation in which the appellate courts have exercised their discretionary powers to retain parties. Dickson Welding should have filed a protective notice of appeal, and A & A's motion is

---

[8]*Anthony* recognized two other instances, neither of which applies to this case, in which a party may be retained on remand for equitable reasons:

> when the reversal "wipes out all basis for recovery against the nonappealing, as well as against the appealing defendant[;]' *Daniels v. Gilbreath,* 668 F.2d 477 (10th Cir.1982); *Kicklighter v. Nails by Jannee, Inc.,* 616 F.2d 734, 742–45 (5th Cir.1980); [and] when the failure to reverse with respect to the nonappealing party will frustrate the execution of the judgment in favor of the successful appellant.

*Anthony,* 693 F.2d at 497–98.

granted.

The judgment of the district court is REVERSED.  A & A's motion to dismiss is GRANTED.  The case is REMANDED for further proceedings consistent with this opinion.

. . . . .