United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 4, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-30872
Summary Calendar

H&H, LLC,

Plaintiff-Appellant-Cross-Appellee,

v.

CWI-WHITE OAKS LANDFILL, LLC,

Defendant-Appellee-Cross-Appellant.

Appeals from the United States District Court for the
Western District of Louisiana, Monroe, La
3:04CV0977

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

H&H, LLC ("H&H") challenges the district court's denial of its
motion for a new trial, arguing that the district court should have
decided a royalty dispute as a matter of law and, in the
alternative, that the jury's finding was against the great weight
of the evidence.  We affirm.

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I. BACKGROUND

H&H and CWI-White Oaks Landfill, LLC ("CWI") entered into a royalty agreement in 1999 which is now the basis for this contractual dispute.

H&H and CWI executed a "Permit Purchase and Sale Agreement" on February 2, 1999, with regard to the sale of approximately 105 acres of property owned by H&H in Monroe, Ouachita Parish, Louisiana. On the same day, H&H, CWI, and a third party, Littleton Enterprises, Inc., ("Littleton") also executed another "Permit Purchase and Sale Agreement" that concerned the sale of Littleton's Type III solid waste landfill permit for the White Oaks Landfill on the aforementioned land. Littleton never held a permit for Type I or Type II waste.

On May 3, 1999, H&H sold the 105 acres to CWI in accord with the terms of the agreement, and H&H, CWI, and Littleton executed a "Royalty Agreement" incorporating the terms and provisions of the Purchase and Sale Agreement.

More than four years later, in August, 2003, CWI obtained the required permits for Type I and Type II solid waste, and began receiving and disposing of that waste in the landfill. H&H brought suit in Louisiana state court in April, 2004, and CWI subsequently removed the case to federal court.

Among various claims, H&H argued at trial that CWI owed a 5% royalty on revenue collected from the receipt and disposal of *all*

types of solid waste at the site, encompassing Types I, II, and III solid waste.[1]   CWI countered that the Royalty Agreement only entitled H&H to a royalty from the receipt and disposal of Type III waste and did not include Types I and II.

A jury trial began on May 9, 2005, in Monroe, Louisiana. Neither party objected to the jury instructions or juror interrogatories.   On May 11, 2005, the jury answered interrogatories and found by a preponderance of the evidence that, under the Royalty Agreement, H&H was entitled a 5% royalty on money collected by CWI for "Type III waste only."   The jury found favorably for H&H as to certain other aspects of the litigation, including that the royalty applied to the use of all 105 acres sold by H&H.   On May 20, 2005, H&H filed a motion for a new trial solely on the issue of whether the royalty applied to all solid waste, or only to Type III waste.   H&H argued that the jury's verdict was not supported by any evidence in the record and was contradictory to the contract's "clear and unambiguous language." The district court denied H&H's motion, and it appeals.

H&H now argues that the district court should have decided the royalty dispute as a matter of law and, in the alternative, that the jury's finding was against the great weight of the evidence.

---

[1]Both parties agree that Type I waste consists of industrial waste, while Type II wastes comprise household garbage.  Type III is generally the less hazardous (and therefore less lucrative) category, consisting primarily of construction and demolition debris, wood waste, and yard trash.

CWI cross-appeals, arguing that in the event that a new trial is granted, it should be granted as to all issues and not merely the single issue adverse to H&H.

## II. DISCUSSION

Whether a contract is ambiguous is a question of law, which we review *de novo*. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1048 (5th Cir. 1998). Once a contract's ambiguity has been determined, however, "the fact finder's interpretation deserves traditional deference." *Id.* We review a district court's denial of a motion for a new trial for abuse of discretion. *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). A district court "abuses its discretion by denying a new trial only when there is an absolute absence of evidence to support the jury's verdict." *Id.*

H&H argues that the court erred as a matter of law, thus abusing its discretion, by failing to "follow the clear and unambiguous contract terms." Indeed, under Louisiana law, no deference should be given to a jury's contract finding when the meaning of the contract can be determined solely from the words upon its face. *See Schroeder v. Bd. of Supervisors*, 591 So.2d 342, 345 (La. 1991). Through their own trial tactics, however, H&H conceded the contract's ambiguity by introducing extrinsic evidence at trial.

H&H was the first party to introduce extrinsic evidence — a

4

memorandum relating to the parties' intent on the royalty issue —
and called several witnesses to testify as to that intent. As the
trial court correctly found, H&H cannot depart from the four
corners of the contract to argue in its favor during the trial,
then abruptly reverse course and argue that the contract was
unambiguous after the jury is unpersuaded by their extrinsic
evidence. *See*, *e.g.*, *Brown v. Presbyterian Healthcare Servs.*, 101
F.3d 1324, 1332 (5th Cir. 1996)("an appellant may not generally
complain on appeal of errors he has himself induced or invited.").
When H&H was the first to introduce extrinsic evidence to argue the
intent of the contract, it effectively surrendered the argument
that the court erred in allowing the jury to consider extrinsic
evidence.

Turning to whether the jury's finding was against the great
weight of the evidence, and given the absence of a timely Rule 50
motion, we cannot find that the district abused its discretion in
denying the motion for a new trial unless "there is an absolute
absence of evidence to support the jury's verdict." *Seidman*, 923
F.2d at 1140. Littleton never possessed a permit for Type I or
Type II waste on the land, and therefore could not have sold the
rights to the receipt of such waste. Moreover, while H&H called
more witnesses than CWI to support their interpretation of the
contract, the Fifth Circuit's approved pattern jury instructions
clearly state, "[t[he testimony of a single witness may be

5

sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary" if the jury believes that witness. Fifth Circuit Pattern Jury Instructions (Civil), § 2.18 (Consideration of the Evidence) (West 2006). Steven Witmer testified on behalf of CWI that the royalty agreement encompassed only Type III waste. Given that H&H presented no evidence suggesting Witmer was any less credible than their own witnesses, we cannot find an absolute absence of evidence supporting the jury's verdict.

Because the district court did not abuse its discretion in denying H&H's motion for a new trial, we need not reach CWI's argument that a new trial, if granted, should include all issues.

For the foregoing reasons, we AFFIRM the district court.