# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30483
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 10, 2015

Lyle W. Cayce
Clerk

MARCUS BERRY,

      Plaintiff - Appellee

v.

AUTO-OWNERS INSURANCE COMPANY; LEON ROBERSON,

      Defendants - Appellants

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:13-CV-145

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Marcus Berry was injured in a car accident in February 2012 and has required medical treatment for chronic back pain ever since. Defendants—an insurance company and the driver that caused the accident—appeal a sizable jury award that has already been reduced by the district court. They argue that the district court abused its discretion by failing to order a new trial or

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30483

remittitur on future medical damages, and by only reducing the jury's award of general damages from $900,000 to $400,000. Finding no reversible error, we affirm.

## I. Background

On February 15, 2012, Leon Roberson cut Berry off in traffic, causing Berry to rear-end Roberson. Berry sued Roberson and his insurer, Auto-Owners Insurance Company; Defendants conceded liability but contested the nature and extent of Berry's damages. The case proceeded to a jury trial at which the evidence showed the following.

Berry began experiencing back pain soon after his accident and consulted a chiropractor who treated him with electric shock, heat and ice, and exercise therapies for several months. These treatments reduced but did not eliminate Berry's pain. Eventually, the chiropractor referred him to Dr. Joseph Turnipseed, a medical doctor specializing in pain management and spinal injuries, who treated Berry and testified at trial. Through physical examination and a procedure by which numbing medicine is injected into the suspected problem area—and with a high degree of confidence—Dr. Turnipseed diagnosed Berry with a "facet joint syndrome" (pain caused by injury to the joints of the spine) attributable to the car accident.[1]

Dr. Turnipseed first treated Berry by injecting a steroid into his facet joints, which provided effective pain relief but did not last long enough. Accordingly, Dr. Turnipseed began performing a procedure known as a "rhizotomy" or "radiofrequency ablation," in which he uses a hot needle to burn away the nerves that deliver pain signals from the injured area to the brain. A rhizotomy is not a permanent fix because nerves regenerate over time. Dr.

---

[1] Although Defendants stress that no MRI or similar imaging test supports this diagnosis, both Dr. Turnipseed and Defendants' own medical expert testified that facet joint injuries often cannot be detected with an MRI.

No. 15-30483

Turnipseed testified that a successful procedure provides effective pain relief for at least six months and as long as a year.  He also testified to medical literature supporting the undiminished effectiveness of annual rhizotomies for seven years.  Dr. Turnipseed said that he has successfully used the procedure on patients ten years in a row, and that he would perform annual rhizotomies on Berry as long as they continued to be effective.

Berry testified that his two rhizotomies thus far have decreased his pain to a manageable level for about eight to nine months, and that with pain medication he can go an additional month or two between procedures.  Berry is willing to undergo more rhizotomies or other procedures, and Dr. Turnipseed believes that he will need to keep performing ablations and prescribing pain medication for Berry.  According to Dr. Turnipseed, if the rhizotomies stop working for Berry, other options would include a "dorsal column stimulator," an implant that uses electrical signals to block pain pathways along the spinal cord.  Regardless, Dr. Turnipseed testified, Berry will need some form of pain management for the rest of his life.

In addition to medical expert testimony, Berry presented an economist, who used the cost of an annual ablation procedure and Berry's actuarial life expectancy to compute a present cash value of approximately $351,000 for a lifetime of annual rhizotomy treatments.  Defendants presented Dr. Allen Joseph, a neurosurgeon, who reviewed Berry's medical records and examined him once for about thirty minutes.  Dr. Joseph agreed that Berry had significant tenderness in his lumbar area.  He expressed skepticism about the effectiveness of and literature supporting long-term repeated rhizotomies, but acknowledged that "there are a lot of people that take a different attitude . . . and . . . they may be right."

Before the accident, Berry—who went to college on a football scholarship—was passionate about athletics and played basketball several

times a week. He was confident and social, and playing sports was his primary social activity. According to his girlfriend—who has lived with him since before the accident—his injuries have left him less happy and outgoing. Berry can no longer engage in sports or play with his young children as actively as he or they would like; his ability to do chores around the house and help his aging parents is also limited, and he has gained about forty-five pounds. Berry has been able to continue working, but testified that he would not be able to do so without the pain relief provided by the ablations.

The jury found that Berry was injured in the accident and was not suffering from a pre-existing condition. The jury awarded Berry $600,000 in damages for past, present, and future pain and suffering; $390,000 for past, present, and future medical expenses; and $300,000 for past, present, and future loss of enjoyment of life. Defendants moved for a new trial or remittitur, claiming that the damages awarded were excessive and raising other arguments they have abandoned on appeal. In a detailed and thoughtful order, the district court denied the motion as to future medical expenses,[2] concluding that there was sufficient evidence for the jury to conclude that Berry would need pain management therapy for the rest of his life, and would likely continue to need ablations performed at least once a year. As to general damages, the district court found that the record "certainly reflects a diminishment in Berry's quality of life," but could not support an award of $900,000. Reviewing Berry's testimony and case law, the district court reduced the general damages award to $400,000 ($250,000 for pain and suffering and $150,000 for loss of enjoyment of life). Berry chose to accept the reduced award

---

[2] Defendants have not challenged the jury's award of approximately $39,000 in past medical expenses.

rather than a new trial, and the district court entered final judgment in the amount of $790,000. This appeal timely followed.

## II. Standard of Review

In a diversity case such as this one, a district court applies the remittitur standard of the forum state. *Foradori v. Harris*, 523 F.3d 477, 497 (5th Cir. 2008). This court reviews a district court's decision on a motion for remittitur for abuse of discretion. *Id.* at 497–98. That review is deferential, for "[t]rial judges have the 'unique opportunity to consider the evidence in the living courtroom context,' while appellate judges see only the 'cold paper record.' " *Id.* at 498 (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 438 (1996)). We therefore "give the benefit of every doubt to the judgment of the trial judge." *Id.* (citation omitted).

Here, the applicable state law provides:

> If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case.

La. Code. Civ. Proc. Ann. art. 1814 (2015). Louisiana courts have "consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion." *Theriot v. Allstate Ins. Co.*, 625 So. 2d 1337, 1340 (La. 1993). We have also stressed deference to trial courts, stating that "in the area of evaluating whether a jury's award is excessive, 'the appellate court should step lightly or not at all.' " *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991) (citations omitted).

No. 15-30483

## III. Discussion

Defendants argue that the district court abused its discretion in upholding the jury's award of medical damages, and in not reducing the jury's general damages award more than it already has. We disagree on both counts.

### A.    Medical Damages

Under Louisiana law, a tort victim may recover both past and future medical expenses. *Menard v. Lafayette Ins. Co.*, 31 So. 3d 996, 1006 (La. 2010). The plaintiff "shows the probability of future medical expenses with supporting medical testimony and estimations of their probable cost." *Id.* "[F]uture medical expenses must be established with some degree of certainty"; that is, the plaintiff must prove "by a preponderance of the evidence the future medical expense will be medically necessary." *Id.* Nevertheless, "an award for future medical expenses is in great measure highly speculative and not susceptible to calculation with mathematical certainty," so fixing such awards generally "turn[s] on questions of credibility and inferences, i.e., whose experts and other witnesses does the jury believe?" *Id.* (citation omitted). Thus, a jury's determination of the appropriate amount of future medical damages is "entitled to great deference on review," and may only be disturbed if it lacks a reasonable basis and is clearly wrong. *Id.* at 1007. And where the jury's findings depend on crediting the testimony of competing witnesses, its decision will almost never be clearly wrong. *Id.* at 1008.

Defendants argue that Berry failed to prove that he would need rhizotomies for the rest of his life, and that the only future medical expenses that could reasonably be awarded are the costs of an annual ablation for the five additional years supported by medical literature described at trial. But it was undisputed at trial that Berry was injured by the accident, and his treating physician testified (1) that Berry would need some form of pain management for the rest of his life and (2) that he had personally given

patients annual rhizotomies for longer than seven years with good results. Defendants cross-examined Dr. Turnipseed and offered their own medical expert in an attempt to persuade the jury that Berry's claimed future medical expenses were unsupported—but the jury evidently credited Berry's evidence. *See Menard*, 31 So. 3d at 1007 ("Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review." (citation omitted)). On this record, we cannot say that the jury's medical expenses award is unreasonable and clearly wrong, or that the district court abused its discretion in declining to disturb it.

**B.    General Damages**

"General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.'" *Duncan v. Kansas City S. Ry. Co.*, 773 So. 2d 670, 682 (La. 2000) (citation omitted). Because general damages by their nature "may not be fixed with pecuniary exactitude," an appellate court's role "is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." *Guillory v. Lee*, 16 So. 3d 1104, 1117 (La. 2009). Accordingly, we will only disturb a general damages award if the record clearly reveals an abuse of discretion. *Id.* (citing *Wainright v. Fontenot*, 774 So. 2d 70, 74 (La. 2000)). If we conclude that the award below represents an abuse of discretion, "then and only then may the prior awards [in factually analogous cases] be used for determining the highest or lowest amount that was reasonably within that discretion." *Cone v. Nat'l Emergency Servs., Inc.*, 747 So. 2d 1085, 1086 (La. 1999); *see also Castro v. Estevez*, 150 So. 3d 431, 433 (La. Ct. App. 2014).

No. 15-30483

Defendants argue that even after the district court's remittitur, $400,000 in damages for pain and suffering and loss of enjoyment of life exceeds the permissible range of discretion. They point out that Berry has not been given a disability or impairment rating by a doctor, and can still work to support his family. The jury and trial court, though, heard and apparently credited testimony by Berry, his companion, and his treating physician indicating that the accident has caused him chronic pain severe enough that he can no longer engage in his primary sources of social interaction and exercise, perform once-routine tasks around the house or to help his parents, or play actively with his young children. Trial testimony also supported findings that Berry had gained over forty pounds and is "not the same person" in terms of personality as before the accident. Cognizant of the district court's better view of the evidence in the context of trial, we do not find that it abused its discretion by failing to reduce below $400,000 the damages for Berry's uncontestedly significant pain and loss of enjoyment of life. And even if we were to look to the comparison cases Defendants insist are the proper barometer of that discretion, we would find no case sufficiently analogous to compel further remittitur or a new trial.

## IV. Conclusion

This is not the rare case where it is appropriate for an appellate court to conclude from cold record that the trial court's entry of a damages award was an abuse of discretion. Accordingly, the judgment of the district court is AFFIRMED.